666 P.2d 1069

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation, Plaintiff-Appellee,**

v.

**Richard H. EDEN and Elizabeth Eden, his wife, Defendants-Appellants.**

No. 16447–PR.

Supreme Court of Arizona, En Banc.

June 29, 1983.

Hofmann, Salcito & Stevens by Leroy W. Hofmann and E.G. Noyes, Jr., Phoenix, for plaintiff-appellee.

Langerman, Begam, Lewis & Marks by Noel Fidel and Robert G. Begam, Phoenix, for defendants-appellants.

Fred J. Pain, Jr., Scottsdale, for amicus curiae.

HAYS, Justice.

Appellant Eden was involved in an automobile accident on March 8, 1979, negligently caused by a driver named Douglas. Douglas carried liability insurance with limits of $15,000 per person and $30,000 per accident, the minimum amounts set forth in A.R.S. § 28–1142, the Arizona Financial Responsibility Law. For purposes of appeal, it is alleged that Eden sustained injuries in excess of $50,000. After collecting $15,000 from Douglas' insurance carrier, Eden made demand for $35,000 on State Farm Mutual Automobile Insurance Company with whom he carried uninsured motorist coverage in the amounts of $50,000/$100,000. State Farm refused to pay and brought a declaratory judgment action to contest Eden's claim.

The trial court held that while Douglas was an *underinsured* motorist, he had complied with the minimum requirements of the Financial Responsibility Law and therefore was not an *uninsured* motorist. The court held that the contract between Eden and State Farm did not cover *underinsured* vehicles. Summary judgment was granted

in favor of State Farm and affirmed on appeal by the Court of Appeals. 666 P.2d 1077 (1982). We granted Eden's petition for review and have jurisdiction pursuant to A.R.S. § 12–120.24 and rule 23, Rules of Civil Appellate Procedure, 17A A.R.S. We vacate the opinion of the Court of Appeals.

According to the terms of their contract, State Farm is obligated to pay Eden all sums which Eden is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained. Resolution of Eden's claim of liability against State Farm requires us to define "uninsured motor vehicle."

The Eden's insurance policy contains the standard uninsured motorist provision and defines an uninsured motor vehicle as:

"A land vehicle with respect to the ownership, maintenance or use of which there is in at least the amounts specified by the financial responsibility laws of the state in which the *insured motor vehicle* is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle . . ."

This passage states that an uninsured motor vehicle is a vehicle which is not insured in at least the amounts specified by the Financial Responsibility Law, *i.e.,* $15,000/$30,000. Edward's vehicle was insured for $15,000/$30,000 and therefore is not an uninsured motor vehicle. Unless the result is contrary to law, we will not interfere with the contract between the parties.

The concept of uninsured motorist coverage as it now exists in Arizona is of recent evolution. Prior to 1965, an insured could purchase liability coverage in the event claims were made against him, but could not acquire comparable protection in the event he was seriously injured in an accident caused by a negligent uninsured motorist. The legislature responded to this inadequacy by promulgating A.R.S. § 20–259.01, requiring insurance companies to provide uninsured motorist coverage to

their purchasers. Laws 1965, ch. 34, § 1. This provision initially required insurance companies to provide uninsured motorist coverage in at least the amounts set forth in A.R.S. § 28–1142, the Financial Responsibility Act. In 1972, A.R.S. § 20–259.01 was amended to require insurance companies to make available uninsured motorist coverage in at least three times the amounts set forth in A.R.S. § 28–1142. The statute then provided:

"B. Every insurer writing automobile liability or motor vehicle liability policies, as provided in subsection A of this section, shall also make available to the named insured thereunder, at his option, additional uninsured motorist coverage in order to provide limits of coverage of at least three times the amounts set forth in § 28–1142."

Laws 1972, ch. 157, § 1. The legislature again revised A.R.S. § 20–259.01 in 1981, now requiring insurance companies to offer underinsured motorist coverage to their purchasers as well as uninsured motorist coverage in limits not less than the liability limits for bodily injury or death contained within the policy. Thus, a purchaser can now acquire protection against the negligent uninsured and underinsured motorists in amounts comparable to his liability insurance coverage.

In 1976, the Edens increased their limits of uninsured motorist coverage with State Farm to $50,000 per person and $100,000 per accident. Appellants contend in this appeal that where a motorist has exercised his statutory option to treble his threshold of protection, an "uninsured motorist" is one with less than $45,000/$90,000 liability coverage.

The argument that an injured person should be allowed to recover under his uninsured motorist coverage at least the difference between his higher limits and the liability coverage of a tortfeasor insured within the minimum amounts required by the Financial Responsibility Law was rejected by the Court of Appeals in *Harsha v. Fidelity General Insurance Company,* 11 Ariz.

App. 438, 465 P.2d 377 (1970). That court said:

"The reference in the statute [A.R.S. § 20–259.01] to the minimum limits of liability insurance required by A.R.S. Sec. 28–1142, subsec. C indicates the complementary character of the legislation vis-a-vis the financial responsibility statutes and furnishes a concisely ascertainable standard for determining insured or uninsured status. The fact that other courts have harmonized the two types of legislation and held a tort-feasor 'uninsured' to the extent that his liability coverage is under their financial responsibility act limits only reinforces the conclusion that the coverage requirements therein are the pertinent and only criteria. If our legislature had intended to create a sliding-scale, after-the-fact, severity-of-injury-determined concept of when a motor vehicle was or was not insured and to what extent, it would have expressed itself in appropriate language."

*Id.* at 440, 465 P.2d at 379.

Appellants argue that *Harsha* is inapposite because decided prior to the effective date of section (B) of A.R.S. § 20–259.01, the treble coverage provision. They assert that the treble coverage provision created a new definition of "uninsured motor vehicle," *i.e.,* one with less than $45,000/$90,000 liability coverage. The question becomes, what impact, if any, did section (B) have on the prior judicially-defined concept of "uninsured." Appellants rely on *Porter v. Empire Fire and Marine Insurance Company,* 106 Ariz. 274, 475 P.2d 258 (1970), as the case which points the way to their desired result.

*Porter* involved an accident wherein the plaintiff and four others were injured solely by the negligence of one driver. The negligent driver carried the minimum amount of liability insurance required by the Financial Responsibility Law which yielded a pro rata share of only $2,500 to the plaintiff after the sum was split among the injured parties. We observed that the purpose of uninsured motorist coverage is to benefit the injured party to the same degree as if the uninsured motorist had liability insurance available in the amounts set forth in the Financial Responsibility Law. We then held that the tortfeasor was actually uninsured to the plaintiff as to the difference between the amount available to Porter and the minimum amounts set forth in the Financial Responsibility Law. In *Porter,* we sought a "single consistent line of reasoning which will serve as a guideline in the determination of subsequent, similar cases." *Id.* at 277, 475 P.2d at 261. Prevalent throughout the case is the notion that "[t]he uninsured policy is issued for the protection of the insured in the minimum amount provided in the Financial Responsibility Act." *Id.* at 279, 475 P.2d at 263.

By statute and case law, uninsured motorist coverage is interwoven with the Financial Responsibility Act. We find no merit to appellant's argument that section (B) implicitly changed the definition of "uninsured." Presumably the legislature was cognizant of the *Porter* definition of "uninsured" when section (B) was added to A.R.S. § 20–259.01. The obvious way to increase the amount of guaranteed protection would have been to increase the limits set by A.R.S. § 28–1142. This the legislature did not do; for us to adopt appellant's definition of "uninsured" would constitute an expansion of the statute. The statutes have never limited the amount of uninsured motorist coverage a company can offer their purchasers. *State Farm Mutual Insurance Co. v. Edgington,* 13 Ariz.App. 374, 476 P.2d 895 (1970). The purpose of section (B) was simply to require insurance companies to make increased amounts of protection available against the uninsured motorist; we find no indication that the legislature intended by this section to redefine "uninsured."

As we discussed above, adequate protection against the negligent uninsured and the underinsured motorist evolved step by step. This protection cannot apply retroactively to encompass situations clearly outside the scope of the then-applicable statutes. The Edens recovered $15,000, the minimum amount set forth in the Financial

Responsibility Act, from the negligent motorist's insurance company. While our holding puts appellant in the position of being worse off because he was struck by a motorist with the minimum required amounts of liability insurance rather than by one with no insurance at all, that risk was inherent in the statutes and in the insurance contract. That the legislature has acted to eliminate this element of risk by providing for underinsured motorist coverage only bolsters our reading of the statute. Accordingly, we affirm the declaratory judgment of no liability of State Farm by the trial court.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.