OPINION
BIRDSALL, Chief Judge.
This appeal involves a consideration of an amendment of the Arizona “Uninsured Motorist Statute”, A.R.S. § 20-259.01, which required automobile liability insurance carriers to include underinsured motorist coverage in policies issued in this state.
The appellants were injured as a result of the negligence of an uninsured motorist. Neither the negligent driver or the vehicle he was driving were covered under any motor vehicle liability insurance policy. The appellants’ vehicle was insured for liability, uninsured motorist coverage and underinsured coverage. Their total damages for their personal injuries were in excess of $100,000, the uninsured policy limit. Although the appellee paid this total amount to the appellants, they contend the underinsured coverage should pay the unrecovered damages above the $100,000, at least to the limit of the policy’s underinsured coverage. The trial court rejected their contentions, finding for the insurance company. We affirm.
The statute as amended effective July 25, 1981, provided, in relevant part:
“§ 20-259.01. Uninsured motorists; coverage; definitions; exceptions.
*455 A. No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state, with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided in the policy or supplemental to the policy, in limits for bodily injury or death prescribed in subsections B and C of this section, but not less than the limits prescribed in § 28-1102, under provisions filed with and approved by the insurance director, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured and underinsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. For the purposes of the coverage provided for pursuant to this section, ‘uninsured motor vehicles’, subject to the terms and conditions of such coverage, includes any insured motor vehicle if the liability insurer of the vehicle is unable to make payment on the liability of its insured, within the limits of the coverage, because of insolvency.
B. Every insurer writing automobile liability or motor vehicle liability policies, as provided in subsection A of this section shall also make available to the named insured thereunder, and by written notice offer the insured and at the request of the insured shall include within the policy uninsured motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy....
C. Every insurer writing automobile liability or motor vehicle liability policies, as provided in subsection A of this section shall also make available to the named insured thereunder and shall by written notice offer the insured and at the request of the insured shall include within the policy underinsurance motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy____
E. ‘Underinsurance motorist coverage’ includes coverage for a person if the sum of the limits of liability under all bodily injury or death liability bonds and liability insurance policies applicable at the time of the accidents is less than the total damages for bodily injury or death resulting from the accident. To the extent that the total damages exceed the total applicable liability limits, the under-insurance motorist coverage provided in subsection C of this section is applicable to the difference.”
The statute was amended in 1982 to add new subparagraph F:
“F. Uninsured and underinsured motorist coverages are separate and distinct and apply to different accident situations. Underinsured motorist coverage shall not provide coverage for a claim against an uninsured motorist in addition to any applicable uninsured motorist coverage. If multiple policies or coverages purchased by one insured on different vehicles apply to an accident or claim, the insurer may limit the coverage so that only one policy, selected by the insured, shall be applicable to any one accident.”
This subsequent provision was not in effect at the time of the accident resulting in this litigation. Other uncontroverted facts underlying this action follow.
In 1976 Harvey Evenchik purchased a fleet automobile liability insurance policy from State Farm. Under the terms of the policy, the Evenchiks were covered by liability insurance with a single limit of $500,-000. They also had uninsured motorist coverage in the amount of $50,000 per person with a total limit of $100,000.
On August 4, 1981, Mark Evenchik leased the new vehicle involved in the sub *456 sequent accident. He called Lloyd Bailey, the State Farm agent who had sold the motor vehicle liability policy to the Evenchiks. Mark asked that Mr. Bailey add the leased car as an insured vehicle under the policy. Mr. Bailey gave Mark a verbal binder and told Mark that Mark would have to sign an application and pay a premium in the near future. Underinsured motorist coverage was not discussed.
On August 18, 1981, an application form was completed adding the new vehicle to the policy. The application form provided limits of coverage on the new vehicle consistent with the other vehicles insured under the policy. Consequently, the new vehicle was covered by a single liability limit of $500,000 and uninsured motorist coverage limits of $50,000/$100,000. The application also provided for $50,000/$100,000 in underinsured motorist coverage. The application was signed. Mr. Bailey did not provide any written information concerning underinsured motorist coverage at that time. Rather, Mr. Bailey simply intended to conform to State Farm’s routine business practice in providing written information to the insureds concerning the new coverage. Those routine practices required that the insured be informed about under-insured motorist coverage at the time that the policy was renewed, and that the insured be permitted to select the amount of coverage desired at the time of renewal. While the Evenchiks paid their insurance premium to State Farm on a monthly basis, their policy was not up for renewal until October 1981. State Farm did not include any written information concerning under-insured motorist coverage in the monthly billings sent to the Evenchiks.
The record reflects that very little information concerning underinsured motorist coverage was given to either Harvey Evenchik or to Mark Evenchik prior to the automobile accident of September 1981. In this respect, Mr. Bailey testified as follows:
“Q. Did you have any discussion with him [Mark Evenchik] at that time [August 18] about underinsured motorist coverage?
A. We probably — yeah, we did.
Q. Tell me what was discussed.
A. I told him it had just been legislated that that was to be there, that he was to have that additional coverage on this car, and so — I am not sure how this conversation progressed, but I would say it would be something like this: He would say: Okay. How much does it cost? And I said: Depends on the amount. You have some choices, and it certainly makes sense to have it consistent with your [uninsured motorist] coverage. And that’s probably what he did.
Q. At the start of the answer to my question, you said, ‘It probably went something like this.' Do you have a specific recollection of the conversation?
A. No.”
With regard to Mr. Bailey’s telephone conversation with Harvey Evenchik on August 18, Mr. Bailey testified as follows:
“Q. Did you talk about underinsured motorist coverage?
A. I’m sure we did, yes.
Q. What did you tell him?
A. Just the substance of what I told you, that it was new, additional, required, and needed to know how much.
Q. Would you have told him anything else?
A. He would have asked me: What do I get out of this coverage? And I would say: If somebody is liable and they hit you, hurt you, and their liability coverage is inadequate, then this will come up on top of that up to the amount of your claim and within your limits.
Q. Would you have told him anything else other than what we have discussed?
A. No, not about that.”
In part the State Farm policy pertaining to uninsured motor vehicle coverage provided:
*457 “We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.
Uninsured Motor Vehicle —means:
1. a land motor vehicle, the ownership, maintenance or use of which is:
a. not insured or bonded for bodily injury liability at the time of the accident; or
b. insured or bonded for bodily injury liability at the time of the accident; but
(1) the limits of liability are less than required by the financial responsibility act of the state where your car is mainly garaged; or
(2) the insuring company denies coverage or is or becomes insolvent; or
2. a ‘hit-and-run’ land motor vehicle whose owner or driver remains unknown and which strikes:
a. the insured or
b. the vehicle the insured is occupying and causes bodily injury to the insured.
An uninsured motor vehicle does not include a land motor vehicle:
1. insured under the liability coverage of this policy;
2. furnished for the regular use of you, your spouse or any relative;
3. owned or operated by a self-insurer under any motor vehicle financial responsibility law, a motor carrier law or any similar law;
4. owned by any government or any of its political subdivisions or agencies;
5. designed for use mainly off public roads except while on public roads; or
6. while located for use as premises.” (emphasis in original)
The new underinsured coverage likewise provided:
“We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an underinsured motor vehicle.
THERE IS NO COVERAGE UNTIL THE LIMITS OF LIABILITY OF ALL BODILY INJURY LIABILITY BONDS AND POLICIES THAT APPLY HAVE BEEN USED UP BY PAYMENT OF JUDGMENTS OR SETTLEMENTS.
Underinsured Motor Vehicle — means a land motor vehicle:
1. the ownership, maintenance or use of which is insured or bonded for bodily injury liability at the time of the accident; and
2. whose limits of liability for bodily injury liability:
a. are less than the amount of the insured’s damages; or
b. have been reduced by payments to persons other than the insured to less than the amount of the insured’s damages.
An underinsured motor vehicle does not include a land motor vehicle:
1. insured under the liability coverage of this policy;
2. furnished for the regular use of you, your spouse or any relative;
3. owned by any government or any of its political subdivisions or agencies;
4. while located for use as premises;
5. designed for use mainly off public roads except while on public roads; or
6. defined as an ‘uninsured motor vehicle’ in your policy.”
(emphasis in original)
The policy endorsement containing the underinsured coverage, including the above language, was delivered to the appellants in October 1981. Thus the policy language is clear and unambiguous. An underinsured motor vehicle does not include an uninsured motor vehicle.
The appellants contend, however, that the statute A.R.S. § 20-259.01, as amended in 1981, and the doctrine of “reasonable expectations”, see Zuckerman v. Transamerica Insurance Company, 133 Ariz. *458 139, 650 P.2d 441 (1982) and Sparks v. Republic National Life Insurance Company, 132 Ariz. 529, 647 P.2d 1127 (1982), cert. denied, 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982), entitle them to recover their total damages. We consider these contentions in that order.
The appellants correctly state that the terms of our uninsured motorist legislation are a part of every liability policy. Sandoval v. Chenoweth, 102 Ariz. 241, 428 P.2d 98 (1967); Jenkins v. Mayflower Insurance Exchange, 93 Ariz. 287, 380 P.2d 145 (1963); Geyer v. Reserve Insurance Company, 8 Ariz.App. 464, 447 P.2d 556 (1968). Also correct is the appellants’ statement that the statute is remedial and should be liberally construed in order to carry out the intent of the legislature. Williams v. Williams, 23 Ariz.App. 191, 531 P.2d 924 (1975); Reserve Insurance Company v. Staats, 9 Ariz.App. 410, 453 P.2d 239 (1969). The appellants also correctly argue that the purpose of the statute is to afford some protection for victims of financially irresponsible drivers. Transportation Insurance Company v. Wade, 106 Ariz. 269, 475 P.2d 253 (1970); Dairyland Insurance Company v. Lopez, 22 Ariz.App. 309, 526 P.2d 1264 (1974); Chambers v. Owens, 22 Ariz.App. 175, 525 P.2d 306 (1974); Geyer, supra.
With the foregoing established, the appellants argue that the legislature, by requiring underinsured coverage, intended that victims be entitled to recover the full amount of their damages caused by financially irresponsible drivers, at least to the extent of the amount of coverage mandated by the legislature. To that end the appellants contend the legislature chose the language appearing in subparagraph E, supra. The appellants reason that since the uninsured motorist has zero coverage he is underinsured and the new coverage kicks in on top of the uninsured limit to provide additional coverage.
The clear intent of the legislature by the 1981 amendment was to require a new type of coverage — underinsured motorist. The amendment refers to the limits of liability under liability insurance policies applicable at the time of the accident. If there were no such policy, the negligent party was uninsured. Only if such a policy existed could the negligent party be insured and underinsured if the limits were inadequate. The 1981 amendment makes the new coverage applicable only to the excess damages over the total liability limits.
When a negligent driver or owner has a liability policy, the vehicle is not uninsured. Allstate Insurance Company v. Pesqueria, 19 Ariz.App. 528, 508 P.2d 1172 (1973); and see State Farm Mutual Automobile Insurance Company v. Eden, 136 Ariz. 460, 666 P.2d 1069 (1983).
The legislative intent is further demonstrated by the 1982 amendment. This amendment is strongly indicative of its original intent. B & P Concrete, Inc. v. Turnbow, 114 Ariz. 408, 561 P.2d 329 (App.1977); Police Pension Board of the City of Phoenix v. Warren, 97 Ariz. 180, 398 P.2d 892 (1965); City of Mesa v. Killingsworth, 96 Ariz. 290, 394 P.2d 410 (1964).
We turn now to the reasonable expectation argument. We find it inapplicable to this fact situation. This rule is applied where it is inequitable to, enforce insurance policy provisions contrary to the reasonable expectations of the insured. Zuckerman, supra; Sparks, supra. Admittedly the appellants were given little information concerning the new coverage added to their policy because of the legislative amendment. However, they were told it was underinsured motorist coverage— that if somebody hits you and is liable and their liability coverage is inadequate, this will provide compensation in addition to their coverage up to the amount of your claim and within your limits. This could not cause appellants to reasonably expect that if they were injured by an uninsured motorist the new coverage would provide them with additional protection.
The doctrine of reasonable expectations should only be applied if the terms of the policy are ambiguous, the policy has a hidden trap or pitfall or the fine print takes away the coverage that is given by the large print.
*459 The appellants argue that they are entitled to the “reasonable expectation” that they would receive the benefits of each and every coverage for which they paid a premium. The answer to that argument is that they did. A premium was paid for uninsured motorist coverage and the full policy limits have been paid.
Their reliance on Zuckerman v. Transamerica Insurance Company, supra, and Sparks v. Republic National Life Insurance Company, supra, is misplaced. What they ignore are the statements of our supreme court that the insurer cannot defeat coverage by raising “unusual exclusions or termination rights” not contained in the information given the insured. We are not dealing with an exclusion or a termination right. We are dealing with uninsured motorist coverage that is set forth in detail in the policy and with statutory provisions which clearly set forth the intent of the legislature that the two types of coverage are to apply in separate fact situations.
In Sparks, supra, the supreme court was concerned with an insured who had seen a brochure only and was never informed that the master policy would exclude coverage if the insured ever stopped making payments. In Zuckerman, supra, the court was dealing with a limitations clause which would have caused a termination of the policy and could not have been anticipated by a reasonable consumer.
An analogous case has been decided by the Delaware Supreme Court in State Farm Mutual Automobile Insurance Company v. Hallowell, 426 A.2d 822 (1980), with a second opinion at 443 A.2d 925 (1982). There the court was dealing with uninsured motorist coverage. The plaintiff was injured by a person who carried liability limits of 20/40. The injured person had an uninsured policy with limits of 100/300. The court held that since the adverse vehicle was insured, it was not an uninsured automobile and therefore the uninsured motorist coverage did not apply. The plaintiff then argued that based on the doctrine of reasonable expectations he expected to receive uninsured coverage when his damages exceeded the liability limits of the tortfeasor. The court refused to adopt this theory holding that the doctrine of reasonable expectations is applicable to a policy of insurance only if the terms thereof are ambiguous or conflicting, or if the policy contains a hidden trap or pitfall.
The doctrine of reasonable expectations does not apply to this case. It is not and should not be the function of the court to re-write the policy. The court in Zuckerman, supra, in discussing that doctrine, limited it to statute of limitations clauses, notice of loss clauses, and proof of loss clauses, together with the cooperation clause. None of these clauses are before the court.
There is nothing in the policy provisions dealing with uninsured motorist coverage that provides a trap or is ambiguous. Any ordinary person construing those words would believe that the coverage applied when the vehicle or driver did not carry a liability insurance policy.
Affirmed.
HATHAWAY and HOWARD, JJ., concur.