703 P.2d 580

**PREFERRED RISK MUTUAL INSURANCE COMPANY, an Iowa corporation, Plaintiff-Appellee,**

**v.**

**Harlyn TANK, Special Administrator of the Estates of Christy Lynn Presley and Victoria T. Presley, deceased; Roger V. Johnson, Conservator of the Estates of James Michael Johnson, a minor, and Kathy Ann Johnson, a minor; and Harold Presley, a single person, Defendants-Appellants.**

**No. 1 CA–CIV 7967.**

Court of Appeals of Arizona, Division 1, Department D.

July 16, 1985.

**34**

Affirmed.

Udall, Shumway, Blackhurst, Allen, Lyons & Davis, P.C. by Merle M. Allen, Jr. and Steven H. Everts, Mesa, for plaintiff-appellee.

Paul J. Faith, Goodyear, for defendants-appellants.

## OPINION

HAIRE, Judge.

This appeal is from summary judgment awarded in favor of Preferred Risk Mutual Insurance Company (Preferred Risk) in a declaratory judgment action filed to determine whether it was obligated to provide coverage pursuant to the underinsured motorist provision of an automobile insurance policy. The trial court held that the contract was valid, was contrary neither to Arizona law nor public policy and that Preferred Risk was not required to pay appellants anything under the underinsured motorist provision. The appellants, the personal representative of two insureds and the conservator of the estates of two minor insureds, argue on appeal that the exclusion upon which Preferred Risk based its denial of coverage is an impermissible attempt to narrow the coverage mandated by Arizona's underinsured motorist statute, and thus is in derogation of public policy. We disagree and affirm the trial court's judgment.

The injured persons were all passengers in a truck being driven by Harold Presley when it was involved in an accident caused by his negligence.[1] Harold Presley's wife, their daughter, and the driver of the other vehicle were killed and two of his wife's children by a prior marriage were seriously injured.

At the time of the accident, Preferred Risk insured the Presleys under an automobile insurance policy providing for bodily injury liability of $50,000 for each person and $100,000 for each occurrence. The policy also provided uninsured and and underinsured motorist coverage for bodily injury of $15,000 for each person and $30,000 for each occurrence. All four of the passengers were "insureds" under the terms of the policy.

Preferred Risk paid out the policy limit of $100,000 for bodily injury, distributing it among the injured persons or their estates. The defendants then requested payment under the Underinsured Motorist Coverage Endorsement contained in the policy, which provided that:

"The company will pay such uncompensated damages which the insured or his legal representative shall be legally entitled to recover from the owner or operator of an underinsured highway vehicle because of bodily injury...."

Preferred Risk denied coverage based on the policy definition of an "underinsured highway vehicle" which excluded the in-

---

**1.** The issue of Presley's negligence was never litigated, but was presumed by the insurance company which paid in full the liability coverage provided for in the policy.

sured vehicle. The company then filed this declaratory judgment action to determine whether the passengers were entitled to coverage under that portion of the policy.

■ The issue on appeal is whether an insured, injured by the negligence of the named insured driver while occupying the insured vehicle, is entitled to recover under the underinsured motorist provision of the policy when his damages exceed the liability coverage purchased by the named insured. We hold that he may not, and accordingly affirm the trial court's grant of summary judgment.

In Arizona every insurer is required to offer underinsured motorist coverage as a part of its automobile insurance policies:

"Every insurer writing automobile liability or motor vehicle liability policies, as provided in subsection A of this section shall also make available to the named insured thereunder and shall by written notice offer the insured and at the request of the insured shall include within the policy underinsurance motorist coverage which extends to and covers all persons insured under the policy...." A.R.S. § 20–259.01(C).

The statute further describes the type of coverage contemplated:

" 'Underinsurance motorist coverage' includes coverage for a person if the sum of the limits of liability under all bodily injury or death liability bonds and liability insurance policies applicable at the time of the accident is less than the total damages for bodily injury or death resulting from the accident. To the extent that the total damages exceed the total applicable liability limits, the underinsurance motorist coverage provided in subsection C of this section is applicable to the difference." A.R.S. § 20–259.01(E).

The appellants argue that although the coverage is optional, if the named insured chooses coverage, then the statute mandates that coverage extend to all persons insured under the policy. They conclude that as persons insured under the policy they are covered under the terms of the statute because the liability policy applicable to the accident did not cover the total damages they incurred. This would, in effect, transform underinsured motorist coverage into additional liability coverage for the named insured—a result we reject as contrary to the legislative intent.

■ The issue is clearly one of statutory interpretation. The cardinal rule of statutory construction is to ascertain and give effect to the legislative intent behind the statute. *Calvert v. Farmers Ins. Co. of Arizona,* 144 Ariz. 291, 293, 697 P.2d 684, 686 (1985). In doing so, we look to the policy behind the statute and the evil it was designed to remedy. *Id.* What is necessarily implied in the statute is as much a part of it as what is expressed. *Coggins v. Ely,* 23 Ariz. 155, 162, 202 P. 391, 394 (1921); *Mountain Shadows Resort Hotel v. Industrial Commission,* No. 1 CA–IC 3120, slip op. at 4 (Ariz.App.July 5, 1985).

Although the precise issue before us has not yet been addressed by an Arizona court, the legislative intent behind underinsured motorist coverage as a part of the overall scheme of A.R.S. § 20–259.01 was addressed in *State Farm Mut. Auto. Ins. Co. v. Eden,* 136 Ariz. 460, 666 P.2d 1069 (1983). The court explained that:

"The concept of uninsured motorist coverage as it now exists in Arizona is of recent evolution. Prior to 1965, an insured could purchase liability coverage in the event claims were made against him, but could not acquire comparable protection *in the event he was seriously injured in an accident caused by a negligent uninsured motorist.* The legislature responded to this inadequacy by promulgating A.R.S. § 20–259.01, requiring insurance companies to provide uninsured motorist coverage to their purchasers.... The legislature again revised A.R.S. § 20–259.01 in 1981, now requiring insurance companies to offer underinsured motorist coverage to their purchasers as well as uninsured motorist coverage in limits not less than the liability limits for bodily injury or death contained within the policy. *Thus, a purchaser can now acquire protection*

*against the negligent uninsured and underinsured motorists* in amounts comparable to his liability insurance coverage." *Id.* at 461, 666 P.2d at 1070. (Emphasis added).

This discussion of underinsured motorist coverage is compatible with the definition in *Appleman on Insurance,* which explains that the purpose of underinsured motorist coverage is to permit the insured to recover for damages caused by a negligent motorist as if the motorist had carried liability insurance. *Id.,* § 5071.45.

The three other state courts which have thus far discussed the issue presented in this appeal have all concluded that underinsured coverage may not be "stacked" so as to increase the liability coverage purchased by the named insured. *Millers Casualty Ins. Co. v. Briggs,* 100 Wash.2d 1, 665 P.2d 891 (1983); *Myers v. State Farm Mut. Auto. Ins. Co.,* 336 N.W.2d 288 (Minn. 1983); *Hoffpauir v. State Farm Mut. Auto Ins. Co.,* 427 So.2d 560 (La.App.1983). As stated by the Washington Supreme Court in *Briggs:*

"Our conclusion is also dictated by common sense and the consuming public's general understanding of coverage under these circumstances. The owner of a vehicle purchases liability insurance to, among other things, protect passengers in the vehicle from his, or another driver's, negligent driving. He purchases underinsured motorist coverage to protect himself and others from damages caused by another vehicle which is underinsured. An insured wishing to avoid personal liability, and protect his passengers, may simply increase the liability insurance. The result of dual recovery in the instant case would transform underinsured motorist coverage into liability insurance. This result would cause insurance companies to charge substantially more for underinsured motorist coverage in order to match the cost of that coverage with the presently more expensive liability coverage. This increase in cost would discourage consumers from purchasing underinsured coverage, an important protection presently available for a minimum cost." 665 P.2d at 895.

The statute relating to underinsured motorist coverage was clearly designed to permit the prudent insured to protect himself and his family and passengers against the possibility of injury caused by another motorist with insufficient insurance. This is a completely different type of insurance from liability insurance, which protects those who are injured by the negligence of the insured, and which is dealt with by the legislature in a separate statute. *See* A.R.S. § 28–1251 *et seq.* The exclusion challenged by the appellants does not improperly limit the scope of the coverage mandated by A.R.S. § 20–259.01(C) and (E); in fact, it achieves precisely the purpose envisioned by the legislature. When operation of the insured vehicle causes an injury, liability coverage is available to the injured party. By refusing to pay underinsured motorist benefits in addition, that type of coverage is limited to the situation for which it was created—compensation for injuries caused by other motorists who are underinsured. Thus, although the statute lacks specific terms permitting the exclusion, we find it consistent with the legislative purpose.

The appellants also argue that the exclusion violates public policy, relying on decisions which have invalidated certain exclusions limiting coverage in uninsured motorist policies. We find the policy considerations discussed in those cases completely inapplicable to the problem before us. First, because the two types of insurance are fundamentally different, opinions analyzing uninsured motorist coverage do not consider problems arising only under the underinsured motorist provision. For example, the question whether a named insured should be allowed to stack his uninsured motorist coverage with liability coverage from his own policy simply cannot arise; an individual cannot be insured and uninsured at the same time. A person can, however, be insured but voluntarily choose to acquire liability coverage which later proves inadequate, giving rise to the problem at hand.

In addition, appellants have failed in their attempt to draw an analogy between the two types of exclusions. The "other vehicle" exclusion struck down by our supreme court in *Calvert v. Farmers Ins. Co. of Arizona*, 144 Ariz. 291, 697 P.2d 684 (1985) frustrated the statutory purpose by denying any and all benefits to a person who had suffered the very harm insured against—injury by a third party who was uninsured. The exclusion addressed here does not affect coverage for the harm insured against—injury caused by a third party underinsured motorist, nor does it prevent the injured party from recovering the liability benefits to which he is entitled.

We conclude that refusing to permit recovery under the underinsured motorist portion of a policy for injuries caused by the insured vehicle is consistent with the purpose and policy of the legislature in requiring that underinsured motorist coverage be made available. Accordingly, we uphold the exclusion in this contract and affirm the judgment in favor of Preferred Risk. Appellee's request for attorney's fees on appeal is granted, in an amount to be determined pursuant to Rule 21(c), Arizona Rules of Civil Appellate Procedure.

MEYERSON, P.J., and GRANT, J., concur.