182 Ariz. 389 (1994)
897 P.2d 691
Lucio Rosas MANCILLAS, Plaintiff-Appellant,
v.
The ARIZONA PROPERTY AND CASUALTY INSURANCE GUARANTY FUND, a subdivision of the Department of Insurance of the State of Arizona; and Gloria Delvalle, d/b/a Delvalle Agency, Defendants-Appellees.
No. 1 CA-CV 93-0249.
Court of Appeals of Arizona, Division 1, Department A.
December 15, 1994.
As Corrected May 23, 1995.
Review Denied June 29, 1995.[*]
*390 Douglass & Ferrarino by D. Benjamin Ferrarino and Bedford Douglass, Jr., Mesa, for plaintiff-appellant.
Surrano & Massey by Fred L. Howe, Phoenix, for defendant-appellee Fund.

OPINION
TOCI, Judge.
Plaintiff was one of seven people injured in an automobile accident by a tortfeasor with a statutory minimum liability coverage. Apportionment of the tortfeasor's liability policy limits among the injured parties resulted in plaintiff recovering less than the minimum amount specified in the Financial Responsibility Law. The issue is whether the tortfeasor is therefore "functionally uninsured" so that plaintiff may recover under the uninsured motorist provisions of his own policy, the difference between the amount available to him from the tortfeasor's liability policy and the minimum amount of uninsured motorist coverage required by the Financial Responsibility Law.
Lucio Rosas Mancillas appeals the trial court's grant of summary judgment to The Arizona Property and Casualty Insurance Guaranty Fund ("the Fund"). He raises the following issues: (1) is he entitled to uninsured motorist benefits to the extent of the $15,000 statutory minimum required for such coverage, and (2) if not, should underinsured motorist coverage be written into his policy as a matter of law even though he signed a written waiver of such coverage?
We hold that Mancillas is entitled to uninsured motorist benefits up to the statutory minimum amount. Because we answer the first issue in the affirmative, we need not address the second issue raised in this appeal.[1]
I. FACTS AND PROCEDURAL HISTORY
Mancillas purchased automobile liability insurance from Old Hickory Casualty Insurance Company ("Old Hickory"). The policy provided liability and uninsured motorist coverage of $15,000 per person/$30,000 per accident. The policy defined "uninsured motor vehicle" in part as:
a motor vehicle for which there is no bodily injury policy or liability bond available at the time of the car accident with at least the minimum limits required by the financial responsibility law of the state in which your car is principally garaged.
*391 Mancillas signed a form rejecting underinsured motorist coverage, and no such coverage was afforded by the policy.
Several months later, Mancillas was involved in an automobile accident caused by Roberto D. Enriquez. Mancillas, each of the four passengers in his car, and two of the passengers in Enriquez's car were injured and incurred medical bills. All seven claimants filed personal injury claims with Enriquez's insurer, and five of those claimants, including Mancillas, later sued Enriquez for their injuries.
After the suits were consolidated, counsel for Enriquez disclosed that Enriquez had only $30,000 in policy limits. His insurer proposed a pro-rata distribution of the $30,000 based on the amount of each claimant's medical bills. Mancillas' share of this distribution was $2,215.58, which did not fully compensate him for his injuries.
Mancillas made a claim for uninsured motorist benefits with his own insurer-Old Hickory. The claim was denied, and Mancillas sued Old Hickory for, among other things, breach of contract and bad faith. Mancillas later amended his complaint to add a claim for underinsured motorist benefits and to add his insurance agent as a defendant. This lawsuit was consolidated with Mancillas' lawsuit against Enriquez. When Old Hickory was declared insolvent, the Fund was substituted as the defendant.
Mancillas filed a motion for partial summary judgment on the uninsured motorist coverage issue. He argued that he was entitled to such benefits for the damages he had sustained in the accident, less the compensation received from Enriquez, up to the $15,000 minimum for uninsured motorist coverage required by the Uninsured Motorist Act, A.R.S. section 20-259.01 (Supp. 1993), and the Uniform Motor Vehicle Safety Responsibility Act, A.R.S. sections 28-1101 to 28-1262 (1989 and Supp. 1993). Mancillas relied on Porter v. Empire Fire and Marine Insurance Co., 106 Ariz. 274, 475 P.2d 258 (1970), as support for his motion.
The trial court denied Mancillas' motion on the basis that Porter is no longer valid law. At the time Porter was decided, section 20-259.01 required insurers to provide its policyholders with uninsured motorist coverage, but it contained no provision for underinsured motorist coverage. The trial court reasoned that Porter was rendered obsolete by the 1981 amendments to section 20-259.01, which added a section requiring insurers to offer underinsured motorist coverage to all policyholders.
The case was then assigned to arbitration on the underinsured motorist coverage issue. The arbitrator ruled that underinsured motorist coverage was included in Mancillas' policy as a matter of law. The Fund appealed to superior court.
The Fund filed a motion for summary judgment on the underinsured motorist issue, arguing that Mancillas had rejected such coverage. Mancillas filed a cross-motion on both issues. He asserted a new argument for uninsured motorist coverage based on the policy's language, and he claimed entitlement to underinsured motorist coverage because Old Hickory's agent had not "effectively" offered such coverage to him as required by law. He argued that his written rejection of such coverage was invalid because he did not read English, did not understand the form, and did not receive an explanation of underinsured motorist coverage from the agent. The trial court denied Mancillas' motion and granted the Fund's motion on the issue of underinsured motorist coverage. This appeal followed.
II. STANDARD OF REVIEW
The facts pertaining to the uninsured motorist coverage issue, which is dispositive of this appeal, are undisputed. When reviewing a grant of summary judgment on undisputed facts, our role is to determine whether the trial court correctly applied the substantive law to those facts. Miller v. Westcor Ltd. Partnership, 171 Ariz. 387, 390, 831 P.2d 386, 389 (App. 1991). Thus, we must determine whether the trial court erred by ruling that Porter is no longer good law.
III. DISCUSSION
A. Is Porter Still Good Law in Light of the Amendments to A.R.S. Section 20-259.01?
We begin with several general principles governing uninsured motorist coverage. *392 First, "[s]ection 20-259.01 is remedial in nature and should be liberally construed in order to effectuate its purpose." Lowing v. Allstate Ins. Co., 176 Ariz. 101, 104, 859 P.2d 724, 727 (1993). Furthermore, "[t]he purpose of uninsured motorist coverage is to `benefit the injured party to the same degree as if the uninsured motorist had liability insurance available in the amounts set forth in the Financial Responsibility Law.'" Herring v. Lumbermen's Mut. Casualty Co., 144 Ariz. 254, 256, 697 P.2d 337, 339 (1985) (quoting State Farm Mut. Auto. Ins. Co. v. Eden, 136 Ariz. 460, 462, 666 P.2d 1069, 1071 (1983)). Finally, "[A]n insured motorist with too little insurance to compensate an injured party up to the minimum statutory limits is considered uninsured." Lowing, 176 Ariz. at 105, 859 P.2d at 728 (describing the court's holding in Porter, 106 Ariz. at 279, 475 P.2d at 263).
In Porter, the Arizona Supreme Court addressed virtually the identical facts presented by this case. Porter was one of five persons injured in an automobile accident caused by Joseph Fitch. 106 Ariz. at 275, 475 P.2d at 259. Fitch carried liability insurance in the minimum amounts required under the financial responsibility laws at that time  $10,000 per person/$20,000 per occurrence. Id. The parties agreed that Porter's damages met or exceeded the statutory single-injury minimum of $10,000. Id. at 276, 475 P.2d at 260. Yet, because of the number of persons injured in the accident, Porter received only $2,500 in settlement proceeds  $7,500 less than the applicable statutory minimum. Id. Porter subsequently made demand on his own insurer for the remaining $7,500, claiming that he was entitled to recover the sum as uninsured motorist benefits. Id.
The Arizona Supreme Court ruled in Porter's favor. It held that where the tortfeasor's automobile liability insurance is insufficient to provide the injured party with at least the statutory minimum in compensation, the tortfeasor will be considered "uninsured." Id. at 279, 475 P.2d at 263. Thus, the injured party may recover from his own uninsured motorist coverage any deficiency between the tortfeasor's payment and the statutory minimum amount. Id. The court reasoned:
The uninsured policy is issued for the protection of the insured in the minimum amount provided in the Financial Responsibility Act. Otherwise ... the insured might be better off if the offending motorist had no insurance whatsoever. We agree with the principle that the person who avails himself of the protection afforded by uninsured motorist coverage should be permitted to recover as if the tortfeasor had the minimum amount of liability insurance; provided that there be available to him the full amount of his damages, up to the minimum amount prescribed by the Financial Responsibility Act, which in this case is $10,000. This is so whether the sum is recoverable under the insured's policy alone or in combination with those funds actually receivable from the tortfeasor's liability coverage.
Id.
Two cases reaffirmed Porter after the 1981 amendments to A.R.S. section 20-259.01. In Eden, the supreme court, while distinguishing Porter, recognized the continued validity of that case:
We find no merit to appellant's argument that section (B) [added in 1972] implicitly changed the definition of "uninsured." Presumably the legislature was cognizant of the Porter definition of "uninsured" when section (B) was added to A.R.S. § 20-259.01.
136 Ariz. at 462, 666 P.2d at 1071. Herring, decided in 1985, also distinguished, but reaffirmed, Porter:
We do not retreat from Porter, but we do not believe that it governs the present situation. In Porter, the claimant was a victim, actually injured in the accident. In the case at bench, the minimum amount guaranteed by the financial responsibility law was available to the victim ... That amount has been paid. Thus, the question here is not whether minimum coverage was available for each victim injured or killed in the accident. ...
144 Ariz. at 256, 697 P.2d at 339 (emphasis added).
*393 The Fund does not dispute that the facts of this case fall squarely within the purview of Porter; rather, the Fund argues that Porter was rendered obsolete in 1981, when our legislature amended A.R.S. section 20-259.01 to require insurers to offer underinsured motorist coverage to their policyholders. The Fund points out that although Eden and Herring were decided after 1981, the accidents at issue in those cases occurred before 1981. The Fund relies on a statement in Evenchik v. State Farm Insurance Co., 139 Ariz. 453, 458, 679 P.2d 99, 104 (App. 1984), that "[w]hen a negligent driver or owner has a liability policy, the vehicle is not uninsured."
The Fund's reliance on Evenchik is misplaced. In that case, the negligent third party did not have a liability insurance policy covering the injuries plaintiffs sustained in the accident. Id. at 454, 679 P.2d at 100. Thus, to resolve the case, the court did not need to decide what effect a tortfeasor's liability insurance policy would have on uninsured motorist coverage. The court decided a different issue: whether a negligent third party with no liability insurance at all was an "underinsured motorist." See id. Consequently, the Evenchik statement upon which the Fund relies  that if a tortfeasor has liability insurance the vehicle is not uninsured  is dicta, and not binding on this court. See Haldiman v. Gosnell Dev. Corp., 155 Ariz. 585, 589, 748 P.2d 1209, 1213 (App. 1987).
Evenchik is questionable precedent for several additional reasons. First, because the facts are different, Evenchik is distinguishable from this case. There, the question was whether a negligent third party with no liability insurance was underinsured. Here, we must decide if an uninsured motor vehicle includes a vehicle upon which the liability limits of the tortfeasor's policy are insufficient to meet the statutory minimum for each injured person. Furthermore, the Evenchik court cited Eden as authority for the statement that a tortfeasor with insurance is not uninsured. See Evenchik, 139 Ariz. at 458, 679 P.2d at 104. Eden, however, affirmed the Porter definition of uninsured motor vehicle. See Eden, 136 Ariz. at 462, 666 P.2d at 1071 ("We ... held that the tortfeasor was actually uninsured to the plaintiff as to the difference between the amount available to Porter and the minimum amounts set forth in the Financial Responsibility Law."). Evenchik, therefore, is of little help to the Fund.
The Fund's main argument, however, is not based on Evenchik; instead, the Fund relies on the proposition that the 1981 amendments to section 20-259.01 implicitly abolished Porter. The Fund contends that at the time Porter was decided, A.R.S. section 20-259.01 did not address the situation presented by that case  recovery from the underinsured tortfeasor. The Fund claims that the Porter court was therefore forced to hold that an underinsured tortfeasor constituted an uninsured tort-feasor in order to provide the injured party with recovery in that case.
The Fund reasons that the amendment to A.R.S. section 20-259.01 requiring insurers to offer underinsured motorist coverage to their policyholders rendered Porter ineffective. It also contends that this amendment to section 20-259.01 was enacted in response to Porter to ensure that policyholders were protected when the tortfeasor was underinsured. Accordingly, the Fund argues that Porter is no longer valid given that the statutory scheme now protects policyholders in this situation by providing for the offer of underinsured motorist coverage. The trial court concurred with the Fund and ruled that Mancillas was not entitled to uninsured motorist benefits.
Contrary to the lower court's holding, Porter is still good law, as evidenced by Lowing, a recent supreme court case. There, the court held that an unidentified accident-causing motorist was an "owner or operator of an uninsured motor vehicle" within the meaning of A.R.S. section 20-259.01. 176 Ariz. at 106, 859 P.2d at 729. In reaching its decision, the court relied on the Porter holding that an insured motorist with insufficient insurance to pay an injured party the statutory minimum amount is considered uninsured. Id. at 105, 859 P.2d at 728. The court emphasized that it was returning to the "policy expressed in Porter of evaluating the status of the financially irresponsible motorist *394 from the viewpoint of the injured insured." Id. at 108, 859 P.2d at 731. The court concluded that this policy was consistent with the purpose of the financial responsibility laws "to make available to all persons injured by negligent motorists a certain minimum amount of compensation...." Id. at 104-05, 859 P.2d at 727-28. Based on this rationale, the court determined that an unidentified tortfeasor is "functionally uninsured." Id. at 105, 859 P.2d at 728.
Lowing compels us to reject the Fund's argument that the 1981 amendments to section 20-259.01 rendered Porter obsolete. Not only did the Lowing court rely on Porter, it also specifically noted that none of the amendments to section 20-259.01 altered the definition of uninsured motor vehicles. Id. at 106, 859 P.2d at 729; see also Eden, 136 Ariz. at 462, 666 P.2d at 1071 ("Presumably the legislature was cognizant of the Porter definition of `uninsured' when section (B) was added...."). We conclude, therefore, that Porter is still good law.
The dissent, agreeing with the Fund, opines that the legislature in 1981 added the underinsured coverage provision in response to Porter. The dissent reasons that by adding a provision requiring insurers to offer underinsured motorist coverage, which coverage could have protected Mancillas in this situation, the legislature intended to overrule the Porter definition of uninsured motor vehicle. We believe, however, that the dissent's conclusion about the legislature's intent is contrary to Lowing's determination of the legislature's intent.
Viewing the development of section 20-259.01 and the corresponding case law, we believe that the legislature did not intend to disturb Porter's definition of uninsured motor vehicle. First, the legislature added underinsured motorist coverage in 1981, some eleven years after the Porter decision. The legislature, however, had previously amended section 20-259.01 in 1972, just two years after Porter. If the legislature was dissatisfied with Porter, it could have overruled Porter in the 1972 amendments to section 20-259.01. The legislature, however, did not do so. See Eden, 136 Ariz. at 462, 666 P.2d at 1071.
Furthermore, the legislature in the 1981 amendments defined underinsured motor vehicle but did not define uninsured motor vehicle. The mere addition of underinsured motorist coverage did not automatically dispel Porter's definition of uninsured motor vehicle. On the contrary, the 1981 amendments can be easily harmonized with Porter: uninsured motorist coverage guarantees coverage up to the statutory minimum amount; underinsured coverage, if accepted, guarantees coverage beyond that amount. Thus, if it intended to overrule Porter, it is reasonable to assume that the legislature would have included a simple definition of uninsured motor vehicle in the 1981 amendments.[2] The legislature's silence implies satisfaction with Porter.
Nevertheless, we need not engage in speculation because our supreme court in Lowing specifically found that the legislature has not overruled the Porter definition of uninsured motor vehicle. The dissent distinguishes Lowing on the ground that Lowing involved an unidentified motorist, not an underinsured motorist. While this is true, the dissent underestimates the extent of Lowing's reliance on Porter.
The Lowing court based its decision on the Porter ruling that "an insured motorist with too little insurance to compensate an injured party up to the minimum statutory limits is considered uninsured." 176 Ariz. at 105, 859 P.2d at 728. The court did not carve out a new rule governing "unidentified" tortfeasors. Rather, the court held that an unidentified motor vehicle is included in the Porter definition of uninsured motor vehicle. Id.
Finally, to dispel any question that the legislature has not overruled Porter, the Lowing court stated that "[s]ection 20-259.01 has been amended three times ... None of these amendments had anything to do with unidentified drivers, or with the definition of uninsured motor vehicles." 176 Ariz. at 106, *395 859 P.2d at 729 (emphasis added). Thus, the supreme court specifically determined that the legislature has not overruled Porter. This court has no authority to invalidate the supreme court's determination of the legislature's intent.
Because our decision makes Mancillas the prevailing party below, he is entitled to the attorneys' fees he incurred in the trial court pursuant to A.R.S. section 12-341.01(A) (1992).
IV. CONCLUSION
Mancillas is entitled to recover uninsured motorist benefits from the Fund for the difference between the damages he sustained in the accident and the compensation he received from Enriquez, up to the statutory minimum coverage of $15,000.
We reverse the entry of summary judgment in favor of the Fund. This matter is remanded to the trial court for entry of summary judgment in favor of Mancillas on the issue of uninsured motorist coverage and for determination of his actual damages. Upon compliance with Rule 21, Arizona Rules of Civil Appellate Procedure, Mancillas may also recover the costs and attorneys' fees he incurred on appeal.
CONTRERAS, J., concurs.
JACOBSON, Presiding Judge, dissenting.
As Justice Feldman has aptly observed:
Mere disagreement with those who precede us, without more, is not an adequate reason to overrule precedent. While we should and do pay appropriate homage to precedent, we also realize that we are not prisoners of the past.[3]
Wiley v. Industrial Comm'n, 174 Ariz. 94, 102, 847 P.2d 595, 602 (1993) (citations omitted).
The majority's continued reliance upon 25-year precedent established by Porter v. Empire Fire & Marine Insurance Co., 106 Ariz. 274, 475 P.2d 258 (1970), not only shackles us to outmoded reasoning, but also ignores what I believe to be a legislative response to address and remedy problem raised in Porter. See generally 1981 Ariz. Sess. Laws, ch. 224, § 1 (amending former A.R.S. § 20-259.01 by providing for the availability of underinsured motorist coverage).
At the time of the Porter decision, A.R.S. § 20-259.01 provided only that, in order to comply with the applicable Financial Responsibility Laws, insurers had to offer coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease including death, resulting therefrom." See former A.R.S. § 20-259.01, added by Laws 1965, ch. 34, § 1, and amended by Laws 1970, ch. 80, § 1, and Laws 1972, ch. 157, § 1 (emphasis added).
Porter, like this case, involved a multiple victim accident in which the tortfeasor, although insured for liability, had insufficient coverage to reimburse each of his victims in the minimum amount provided by the Financial Responsibility Act.
Under these circumstances, as the court properly observed, if the victims were limited to the tortfeasor's insufficient coverage, they "might be better off if the offending motorist had no insurance whatsoever." Porter, 106 Ariz. at 279, 475 P.2d at 263. In resolving this dilemma, the court quoted from a Rhode Island case:
[T]he definition of an uninsured automobile must as a matter of public policy be construed to include any differential between liability insurance carried by the tort feasor and the minimum limits mandated by the legislature.
Id., quoting Allstate Ins. Co. v. Fusco, 101 R.I. 350, 223 A.2d 447 (1966). That this result is mandated by public policy considerations based upon legislative intent is reinforced by the language of the Porter decision itself:
[I]f such recovery permits the uninsured motorist carrier to escape liability despite the insufficiency of the recovery, then *396 Porter and others in a similar position would be better off if the tortfeasor had carried no insurance. The Uninsured Motorist Law in such instance would not afford the protection which he expected and the Legislature intended.

106 Ariz. at 279, 475 P.2d at 263 (emphasis supplied).
The legislature was not unresponsive to this problem. In 1981, it amended A.R.S. § 20-259.01. To specifically address the problem presented by Porter, the legislature added subsection (C) to the statute, which mandates that every insurer "shall also make available to the named insured ... underinsurance motorist coverage which extends to and covers all persons insured under the policy...." (Emphasis added.)
The amendment further defined this new coverage:
"Underinsurance motor coverage" includes coverage for a person if the sum of the limits of liability under all bodily injury or death liability bonds and liability insurance policies applicable at the time of the accident is less than the total damages for bodily injury or death resulting from the accident.

A.R.S. § 20-259.01(E) (emphasis added).
This provision describes both Mr. Porter's and Mr. Mancillas' position as concisely as if the legislature had their factual situations before it when the amendments were enacted.
The legislature obviously intended to provide by underinsurance for situations different from those that are provided for by uninsured coverage. This is made absolutely clear by its enactment of A.R.S. § 20-259.01(F):
Uninsured and underinsured material coverage are separate and distinct and apply to different accident situations. Underinsured motorist coverage shall not provide coverage for a claim against an uninsured motorist in addition to any applicable uninsured motorist coverage.

(Emphasis added.)
Here, it is clear that Mancillas, in writing, rejected underinsurance coverage.[4] Yet the majority opinion, in direct contravention of the above statutory provisions, allows the insured to reject underinsurance coverage but affords this coverage under the uninsured clause. The result is that Mancillas does not have to buy underinsurance coverage (nor for that matter, must anyone else) because he will get the additional coverage for the premium he paid for uninsured coverage alone. The majority bases this illogical result on the continued validity of Porter.
The majority allegedly supports the continued validity of Porter by three cases decided subsequent to the 1981 amendments providing underinsurance coverage. See State Farm Mut. Auto. Ins. Co. v. Eden, 136 Ariz. 460, 666 P.2d 1069 (1983); Herring v. Lumbermen's Mut. Cas. Co., 144 Ariz. 254, 697 P.2d 337 (1985); Lowing v. Allstate Ins. Co., 176 Ariz. 101, 859 P.2d 724 (1993).
Both Eden and Herring involved accidents occurring prior to the enactment of underinsurance coverage, and, therefore, whether this enactment supersedes the rationale of Porter was not an issue. However, both cases are interesting in how they apply Porter principles.
In Eden, the tortfeasor had insurance coverage of $15,000 per person and $30,000 per accident ($15,000/30,000), the applicable minimum limits under the Financial Responsibility Law, A.R.S. § 28-1142. However, Eden's uninsured coverage under his own policy was $50,000/100,000. Eden's argument, under Porter, was that he was entitled to the difference between his higher limits and the liability coverage afforded by the tortfeasor. The court rejected this argument, noting that the prevalent policy of Porter was to afford coverage up to the minimum amount provided in the Financial Responsibility Act:
By statute and case law, uninsured motorist coverage is interwoven with the Financial *397 Responsibility Act. We find no merit to [Eden's] argument that section (B) [A.R.S. § 20-259.01(B)] implicitly changed the definition of "uninsured." Presumably the legislature was cognizant of the Porter definition of "uninsured" when section (B) was added to A.R.S. § 20-259.01 [increasing uninsured coverage to amounts comparable to liability coverage]. The obvious way to increase the amount of guaranteed protection would have been to increase the limits set by A.R.S. § 28-1142 [minimum amount of coverage]. This the legislature did not do; for us to adopt [Eden's] definition of "uninsured" would constitute an expansion of the statute.
Eden, 136 Ariz. at 462, 666 P.2d at 1071.
Likewise, in Herring, where the tortfeasor had the minimum amount of coverage, the issue was whether the children of the victim of an accident were entitled to uninsured coverage under their father's policy. The court, applying Porter, rejected that argument:
[T]he question here is not whether minimum coverage was available for each victim injured or killed in the accident, but whether each of several beneficiaries of the claim for injury or death of a single victim is entitled to look to uninsured motorist coverage for a guarantee of recovery up to the minimum amount. Porter did not go that far, nor, in our view, has the legislature.
Herring, 144 Ariz. at 256, 697 P.2d at 339.
Finally, although Lowing involved an accident that occurred after the underinsurance enactment, it did not involve underinsurance coverage. Rather, the case turned on whether a "phantom" tortfeasor could qualify as an uninsured motorist where the policy required that the uninsured vehicle actually "hit" or have "physical contact" with the victim. Lowing's reference to Porter was to the accepted rationale of Porter that an injured motorist must receive the minimum amount of compensation under the Financial Responsibility Act. Thus, the court would consider the unidentified tortfeasor to be "functionally uninsured" in order to further that public policy, "because they have no insurance that is in fact available and collectible." 176 Ariz. at 105, 859 P.2d at 728. The case simply had nothing to do with whether the Porter rationale continues to be applicable after the statutory enactment allows an insured to elect to receive underinsured coverage.
All three of these cases make it clear that the result in Porter was based upon ascertaining legislative intent; that is, allowing recovery to an insured in an amount equal to the minimum coverage offered by the Financial Responsibility Act. However, the legislature has now expressed a new legislative intent to cover the factual scenario of Porter by providing for the availability of underinsurance coverage. To not give effect to this amendment is to make it a nullity and ignores the rationale of Porter that coverage is a matter of legislative intent.
The majority opinion expresses the general principle that A.R.S. § 20-259.01 "is remedial in nature and should be liberally construed." To give Mancillas coverage for insurance that he specifically rejected and for which he did not pay a premium is more than "liberal construction"; it is judicial largess.
I would affirm.
NOTES
[*] Moeller, V.C.J., of the Supreme Court, voted to grant the petition for review.
[1] Mancillas concedes that he is prohibited from recovering both uninsured and underinsured motorist benefits. See Ariz. Rev. Stat. Ann. ("A.R.S.") § 20-259.01(F) (Supp. 1993) ("Uninsured and underinsured motorist coverages are separate and distinct and apply to different accident situations. Underinsured motorist coverage shall not provide coverage for a claim against an uninsured motorist in addition to any applicable uninsured motorist coverage.").
[2] A short sentence similar to the following would have sufficed: "Uninsured motorist coverage" provides coverage for injury or damage where the vehicle that caused the injury or damage is not insured by a liability policy.
[3] I realize that, while this court cannot "overrule" the Arizona Supreme Court, no such restraints (within constitutional limits) are imposed upon the legislature. This dissent explores that premise that the legislature has done so by its 1981 amendments to A.R.S. § 20-259.01.
[4] Mancillas argues that this waiver was invalid under Giley v. Liberty Mutual, 168 Ariz. 306, 812 P.2d 1124 (App. 1991). Because neither the majority nor this dissent turns on a construction of Giley, I need not explore in depth either its irrationality or its inapplicability to this opinion.