No. 84-510

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

JOHN McGLYNN and GORDON TRACY,

Plaintiffs,

-vs-

SAFECO INSURANCE COMPANIES OF
AMERICA,

Defendants.

---

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

For Plaintiffs:

Johnson, Skakles & Kebe; David Wing argued, Anaconda,
Montana
Knight, Dahood, McLean & Everett; Edward Beaudette
argued, Anaconda, Montana
Keller, Reynolds, Drake, Sternhagen & Johnson; P.
Keith Keller, Helena, Montana

For Defendants:

Williams Law Firm; Richard Ranney argued, Missoula,
Montana

---

Submitted:  May 16, 1985

Decided:  June 19, 1985

Filed: JUN 1 1985

*Ethel M. Harrison*

---

Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

The United States District Court for the District of Montana, Butte Division, W. D. Murray, J., certified the following question to this Court for resolution:

> "May an insurance company issuing a policy of automobile liability insurance in the State of Montana require physical contact of a vehicle driven by an unknown driver with that of the insured, as a precondition of coverage under the uninsured motorist provision of the policy required by MCA, section 33-23-201?"

This is a case of first impression in Montana. After due deliberation, we answer the question in the negative.

On October 19, 1982, John McGlynn was riding as a passenger in a vehicle driven by Gordon Tracy. The vehicle was heading north on Interstate Highway 15, approximately 17 miles north of Butte, Montana. As their vehicle approached a bridge, another vehicle approached from the opposite direction. Just when their vehicle was a short distance from the bridge, the other vehicle crossed over the centerline into their lane of travel. In order to avoid a collision, Tracy swerved his vehicle, and in so doing, squarely struck the bridge abutment. As a result, McGlynn received serious injury, including loss of hearing, and inability to pursue the employment in which he had engaged prior to the accident.

It is undisputed there was no physical contact between the two vehicles. The other vehicle stopped briefly after the accident, but then continued on, and the identity of the driver or the vehicle remains unknown. Tracy carried insurance through Safeco Insurance Companies of America.

Following the above-described events, McGlynn filed a negligence action against Tracy, and an action against

Safeco, which listed Tracy as its insured on a policy of automobile liability insurance. The claim against Safeco was based on the tortious conduct of the driver who crossed the centerline and McGlynn sought benefits under the policy's uninsured motorist provisions.

Safeco answered and filed an affirmative defense. Tracy filed a cross-claim against Safeco for uninsured motorist benefits. On November 30, 1983, the case was removed to Federal District Court in Butte on the ground of diversity of citizenship. Safeco then moved to dismiss by summary judgment, on the basis that the policy contains a clause which defines an uninsured motorist as a hit-and-run automobile, and that the accident must arise "out of physical contact of such automobile with the insured or with an automobile which the insured is occupying." Certification to this Court followed.

Joined as plaintiffs in the cross-claim against Safeco, McGlynn and Tracy contend that the physical contact requirement of the uninsured motorist provisions asserted by Safeco is repugnant to our uninsured motorist statute, § 33-23-201, MCA, and to public policy, and that that requirement is therefore null and void.

They further contend that proof of absence of liability insurance of the unidentified motorist is not a condition precedent to the recovery of benefits. A separate discussion of this subissue is unnecessary because of the language contained in the policy itself.

Safeco takes the position that the statute protects only those insureds who are "legally entitled to recover" from uninsured motor vehicle operators, and that the statute

should not be broadened to include unknown and unidentified motor vehicle operators as well.

Further, it asserts that if the legislature had meant to extend coverage to situations where there was no physical contact it could have so provided, and that it is not the role of the Supreme Court to create new law.

Our uninsured motorist statute, § 33-23-201, MCA, contains no prerequisite of physical contact, and makes no reference to hit-and-run drivers:

> "Motor vehicle liability policies to include uninsured motorist coverage--rejection by insured. (1) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state, with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in 61-6-103, under provisions filed with and approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom.
>
> "(2) The named insured shall have the right to reject such coverage. Unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with the policy previously issued to him by the same insurer."

Safeco contends its policy is in conformity with Montana's uninsured motorist statute, and that it extends coverage in words similar to the statute:

> "To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury . . ." Coverage G, at 4 of policy. (Emphasis added.)

The uninsured motorist definition in the Safeco policy provides:

"'uninsured motor vehicle' includes a trailer of any type and means:

"(a) an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or is or becomes insolvent; or

"(b) a hit-and-run automobile;

". . .

"'hit-and-run automobile' means an automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident, provided: (1) there cannot be ascertained the identity of either the operator or the owner of such 'hit-and-run automobile'; (2) the insured or someone on his behalf shall have reported the accident within 24 hours to a police, peace or judicial officer or to the commissioner of motor vehicles, and shall have filed with SAFECO within 30 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and (3) at SAFECO's request, the insured or his legal representative makes available for inspection the automobile which the insured was occupying at the time of the accident." (Emphasis added.)

There is a variety of positions in jurisdictions around the country concerning whether coverage should or should not attach. The most recent opinion collecting and analyzing these positions derives from our sister state of Idaho. In Hammon v. Farmers Insurance Group (Idaho App. 1984), 692 P.2d 1202, that court ruled that the policy requirement of physical contact was void as contrary to statute. We note

- 5 -

Idaho's uninsured motorist statute contains language strikingly similar to ours, and in pertinent part, verbatim to ours:

> ". . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom . . ." Hammon, supra, 692 P.2d at 1203.

We believe that reading the statute as extending coverage is a very salutary approach, for three reasons. First, we must read § 33-23-201, MCA, in conjunction with § 61-6-301, MCA. The latter statute provides mandatory liability protection:

> "Required motor vehicle insurance. (1) Every owner of a motor vehicle which is registered and operated in Montana by the owner or with his permission shall continuously provide insurance against loss resulting from liability imposed by law for bodily injury or death or damage to property suffered by any person caused by maintenance or use of a motor vehicle . . ."

Since the purpose of our uninsured motorist statute is to afford the same protection to a person injured by an uninsured motorist as he would have had if the negligent motorist had carried liability insurance, it would defeat the purpose of the statute to allow insurance policies to require physical impact before coverage is extended to the insured.

Second, there has been no flood of fraudulent claims with so-called "phantom vehicles." Certainly, invalid allegations of hit-and-run vehicles are a concern. The point was well-covered in Clark v. Regent Ins. Co. (S.D. 1978), 270 N.W.2d 26, 30:

> "The contention that the physical contact requirement prevents fraudulent claims appears to be of dubious merit. We have not found any signs of a flood of 'phantom vehicle' claims in the states rejecting the requirement, nor have the legislatures of those states found it necessary to enact a physical contact requirement to their

> uninsured motorist statutes. We perceive no sound reason to deprive an injured insured of recompense for a valid claim to prevent the 'flood of fraudulent claims' which has not materialized in other states."

The burden of proof is upon the claimant to show the accident was caused by an unidentified driver, but recovery should not be denied simply because there was no physical contact with the offending car.

That brings us to the third reason coverage should attach--the distinction between "hit-and-run" and "cause-and-run." Again, the Clark opinion provides insight:

> "The fallacy in interpreting the phrase from the literal meaning of the word 'hit' lies in the fact that it ignores the commonly accepted meaning of the entire phrase. 'In a majority of jurisdictions, statutes have been enacted imposing a duty upon an individual operating or in control of a motor vehicle involved in an accident causing personal injury or property damage, to stop, give certain information, and to render aid to those who have been injured.' . . .

> "The term 'hit-and-run' is a baseball colloquialism which was used to describe violations of the motor vehicle code requirement that a driver involved in an accident must stop, render aid and leave his identification as required by SDCL 32-34-3 to 32-34-9. Although the term 'hit-and-run' is not used in the body of those statutes, the compilers have consistently used it in the captions, and this court has referred to them as 'hit-and-run' statutes (see State v. Minkel, S.D., 230 N.W.2d 233 (1975)) even though there is no statutory requirement of a physical contact, only that the automobile be 'involved in an accident.' It appears that it was the legislature's intention in using the term 'hit-and-run' in SDCL 58-11-9 to refer to any motorists involved in an accident who failed to comply with SDCL 32-34-3 through 32-34-9, without a requirement of physical contact." 270 N.W.2d at 31.

We agree. In Sullivan v. Doe (1972), 159 Mont. 50, 60, 495 P.2d 193, 198, we ruled:

> "The basic purpose of this statute is obvious--to provide protection for the automobile insurance policyholder against the risk of inadequate compensation for injuries or death caused by the negligence of financially irresponsible motorists." (Emphasis added.)

- 7 -

Concededly, the issue giving rise to that statement in _Sullivan_ was whether workers' compensation benefits could be offset against uninsured motorist coverage, _not_ whether "hit-and-run" could be or should be synonymous with "cause-and-run." It should be noted also that Sullivan _did_ involve a head-on collision, but nothing in the opinion suggested recovery turned on a physical impact. At the same time, lack of statutory mention of "hit-and-run" or "physical contact" is consistent with a result finding liability _caused_ _by_ the negligence of a financially irresponsible motorist.

In the present case, McGlynn was occupying the vehicle Tracy was driving. Tracy swerved in an attempt to extricate himself from the collision that was imminent. His alternatives were limited: either maintain his course into a head-on collision, or swerve in an attempt to avoid such a collision. One case discussed those "alternatives." In Webb v. United States Automobile Ass'n. (Pa. Super. 1974), 323 A.2d 737, 743, it was noted:

> "If the legislature intended to 'provide protection against innocent victims of irresponsible drivers,' (Citations omitted) it could not also intend that the motorist faced with the decision whether to collide with another vehicle or to avoid it should choose to collide or else lose his protection."

The problem was also the subject of a state bar journal article. In 55 Ill.Bar J. 143, 147 (1966):

> "An alert, athletic pedestrian who barely manages to avoid contact with such a car by leaping through a plate glass window receives the unkindest cuts of all for his efforts, but cannot qualify. Snubbed, too, is the driver who miraculously manages to steer his car off the highway and thus avoid a collision with an oncoming vehicle traveling in the wrong lane, but in so doing effects a rather abrupt stop against an unyielding bridge abutment."

That is exactly Tracy's plight. His injuries were _caused_ _by_ an unknown or uninsured motorist.

From a policy standpoint, construction of statutes is a role embraced uniquely by the court system. The Supreme Court of Kansas recently reviewed a wealth of cases which construed their state's uninsured motorist statute, and concluded that the purpose of the statute, and the clear legislative intent was to expand insurance protection to the public who use the streets and highways. Simpson v. Farmers Ins. Co., Inc. (Kan. 1979), 592 P.2d 445, 450.

To allow Safeco to interpret our statute as to deny coverage would seem to limit or restrict coverage rather than to expand it. The Hammon case, supra, addressed this point as well. There, the court noted that even though the State Director of Insurance must approve all policies, and often approves policies containing physical contact requirements, such posture does not render the Director's judgment final as to the validity of coverage, especially when that coverage is legislatively mandated. 692 P.2d at 1206.

For the above reasons, we hold that the physical contact requirement of the policy of insurance Safeco provided to Tracy, is repugnant to Montana's uninsured motorist statute. Our construction of the statute neither expands nor broadens the scope of uninsured motorist insurance coverage in Montana; it merely clarifies the coverage to which the legislature has deemed claimants such as Tracy are legally entitled. It is enough for a claimant to show his injuries were _caused_ _by_ an uninsured or unidentified motorist, in order to come within the protection of § 33-23-201, MCA.

_____
Justice

We Concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_Fred J. Weber_

_John C. Sheehy_

_Frank B. Morrison_

_L. C. Gulbrandson_
Justices