727 P.2d 321

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
Plaintiff-Appellee,

v.

**Janet M. BRUDNOCK and Steve Harrigan, Defendants-Appellants.**

**No. 17911–PR.**

Supreme Court of Arizona,
En Banc.

Oct. 17, 1986.

Hofmann, Salcito, Stevens & Myers by Gene C. Stevens, Frank Verderame, Phoenix, for plaintiff-appellee.

Rosen & Schneider by David Neal Rosen, Barry J. Klinckhardt, Robert A. Resnik, Phoenix, for defendants-appellants.

HOLOHAN, Chief Justice.

The plaintiff insurance company brought a declaratory judgment action to determine its responsibility on a claim submitted under an automobile insurance policy issued to the defendant Janet Brudnock. The parties submitted the case to the superior court on a stipulated set of facts and filed motions for summary judgment. The trial court granted judgment in favor of the insurance company, finding it had no liability under the policy for the claim. The Court of Appeals affirmed in a memorandum decision. *State Farm v. Brudnock*, 1 CA–CIV 7572, filed Dec. 6, 1984. The defendants sought review which we granted to reexamine our previous cases on the subject.

The essential facts presented in the stipulation are that on November 16, 1982, defendant Janet M. Brudnock had in force with plaintiff State Farm Insurance Company, automobile insurance policy # 4037–553–03. The policy contains the following provisions entitling the insured to coverage for bodily injuries caused by an accident arising out of the operation, maintenance or use of an uninsured motor vehicle:

Uninsured motor vehicle is defined as:

\*   \*   \*   \*   \*   \*

(3) A "hit-and-run" land motor vehicle whose owner or driver remains unknown and which strikes: (a) the insured or (b) the vehicle the insured is occupying and causes bodily injury to the insured.

On November 16, 1982, Janet M. Brudnock was the owner/occupant of a motor vehicle operated by Steve Harrigan. At approximately 7:55 a.m., the defendants Brudnock and Harrigan were westbound on Baseline Road in the vicinity of Recker Road in the City of Phoenix. Baseline Road is a two lane road, one westbound and one eastbound. The defendants had been following a bronze Mazda RX7 for several miles prior to the accident. The Mazda RX7 had been traveling at a high rate of speed and dangerously passing vehicles along the way.

As the Mazda RX7 was attempting to pass another vehicle at approximately the fifth power pole west of Recker Road, an eastbound Chevrolet Corvette had to take evasive action to avoid a head-on collision with the Mazda.

The Corvette went off the roadway and onto the dirt shoulder abutting the south side of Baseline Road. When the driver of the Corvette attempted to regain control of the vehicle it slid across Baseline Road striking the driver's side of the Brudnock vehicle.

Brudnock's vehicle rolled over once after impact with the Corvette and came to rest on all four wheels on the north side of Baseline Road west of Recker Road. The Corvette came to rest when it struck the fifth power pole west of Recker Road on the north side of Baseline Road.

Both Janet Brudnock and Steve Harrigan sustained injuries in the accident. The Mazda RX7 did not make physical contact with either the Brudnock vehicle or the Corvette. The driver of the Mazda did not stop to render aid to the defendants, nor did the driver return to the scene of the accident at any time during the investigation by the police so that driver and vehicle identification could be made. Further, all attempts to locate the Mazda and its driver have been futile.

■ The first issue presented is whether our decision in *Balestrieri v. Hartford Accident & Indemnity Ins. Co.*, 112 Ariz. 160, 540 P.2d 126 (1975), should be overruled.

Appellants contend that A.R.S. § 20–259.01, our uninsured motorist statute, was intended not only to extend coverage against accidents caused by motorists who were identified as uninsured, but also by unknown motorists as well. *See Anderson v. State Farm Mut. Ins. Co.*, 133 Ariz. 464, 468, 652 P.2d 537, 541 (Feldman, J. specially concurring). This court in *Balestrieri* rejected the concept that our uninsured motorist statute includes unknown motorists. 112 Ariz. at 163, 540 P.2d at 129.

The enactment of A.R.S. § 20–259.01 in 1965 "closed the gap" in the Financial Responsibility Act by protecting those negligently injured by financially irresponsible motorists. *Kraft v. Allstate Insurance Company*, 6 Ariz.App. 276, 278, 431 P.2d 917, 919 (1967). In *Harsha v. Fidelity General Insurance Co.*, 11 Ariz.App. 438, 440, 465 P.2d 377, 379 (1970), our Court of Appeals stated that " 'uninsured' means, literally, 'not insured.' " The court held that when our legislature enacted our uninsured motorist statute "it was concerned

with the problem created by the negligent driver who had no insurance at all." *Id.*

In 1975 we decided *Balestrieri, supra.* The Balestrieri vehicle struck a street light pole while avoiding a driver who was making a dangerous lane change. "There was no contact of any kind or nature between the Balestrieri vehicle and the unidentified vehicle." 112 Ariz. at 160, 540 P.2d at 126. Balestrieri sought coverage under the uninsured motorist provision of his valid insurance contract for this "miss-and-run" situation. However, Balestrieri's insurance contract contained a requirement of physical contact for coverage under the uninsured motorist provisions. We found the contractual restriction of the uninsured motorist coverage not in derogation of A.R.S. § 20–259.01 and not void as against public policy. *Id.* at 161, 540 P.2d at 127. We said, as had the Court of Appeals in *Harsha, supra,* that the legislature used the term "uninsured" in its common ordinary sense as one which does not have insurance, literally "not insured." *Id.* at 162–63, 540 P.2d at 128–29. Phantom vehicles did not come under the uninsured motorist statute because the insurance status of the negligent party could not be determined. *Id.* at 162, 540 P.2d at 128. "Because the hit-and-run provision is neither required nor prohibited by the ... uninsured motorist statute, the physical contact requirement is a matter of contract between the insurer and the insured which [this court] will not disturb." *Id.* at 163, 540 P.2d at 129, *citing Lawrence v. Beneficial Fire & Casualty Insurance Co.,* 8 Ariz.App. 155, 444 P.2d 446 (1968). Therefore, to recover under the "hit-and-run" provision of his insurance contract Balestrieri had to have physical contact with the unidentified motorist.

Since our decision in *Balestrieri* in 1975 the legislature has twice, in 1981 and 1982, amended A.R.S. § 20–259.01. Despite the contention that our legislature intended the statute to include "unknown" motorist, *see, Anderson, supra* (Feldman, J. specially concurring), our legislature has not seen fit to redefine this court's interpretation of the statute in *Balestrieri.* If we had incorrectly interpreted the legislative intent, the legislature surely would have changed the statute to include unknown motorists. In light of legislative acquiescence in our decision in *Balestrieri,* we decline to overrule it.

■ The second issue presented by appellants is whether the physical contact requirement of the insurance policy is satisfied when contact is made by the insured with the unidentified vehicle through an intermediate object.

In effect appellants argue that the collision between the Brudnock vehicle and the Corvette was causally linked to the unidentified driver of the Mazda, and, since the contact between the two vehicles was caused by the Mazda, the policy provision is satisfied. Appellants note that in *Anderson, supra,* we held that a hit-and-run vehicle which struck another vehicle propelling it into the plaintiff's vehicle was "physical contact" within the meaning of the insurance policy hit-and-run provision. Do the facts in the case at issue come within the *Anderson* requirements?

In *Anderson* we referred to a number of the appellate cases which had considered the meaning of the "physical contact" provision in automobile insurance policies. 133 Ariz. 466–67, 652 P.2d 539–40. One common factor seemed to be present in the cases considered, and that factor was that the hit-and-run vehicle actually struck another object or vehicle which was forced to collide with the vehicle of the insured. Unlike the situations reviewed in *Anderson,* the unidentified vehicle in this case was a "miss and run" vehicle which did not come in physical contact with any object which came in contact with the insured's vehicle. There was in fact no direct or even indirect contact by the unidentified vehicle with any of the other vehicles. Unlike *Anderson,* the facts of this case do not support a

finding of physical contact with the unidentified vehicle.

The memorandum decision of the Court of Appeals is approved, and the judgment of the superior court is affirmed.

GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

FELDMAN, Justice, dissenting.

In my view, the physical contact requirement of the "hit-and-run" provision violates A.R.S. § 20–259.01 requiring uninsured motorist coverage, and is therefore void. Many of the arguments supporting this view are set forth in my concurring opinion in *Anderson v. State Farm Mutual Automobile Insurance Co.,* 133 Ariz. 464, 468–71, 652 P.2d 537, 541–44 (1982) and need not be repeated. Suffice it to say that the "significant trend" of modern cases holds that even absent specific statutory coverage of hit-and-run or miss-and-run accidents, uninsured motorist statutes contemplate coverage for such accidents. A. WIDISS, A GUIDE TO UNINSURED MOTORIST COVERAGES § 2.41, at 141–50 (Supp.1981). The physical contact requirement is in derogation of the protective purposes of uninsured motorist statutes. *Id.; see also* 1 A. WIDISS, UNINSURED AND UNDERINSURED MOTORIST INSURANCE § 9.9, at 350–51 (2d ed. 1985).

More than twelve states have held the physical contact requirement void as contrary to statutory mandate for uninsured motorist coverage. 1 A. WIDISS, *supra* § 9.7, at 346. Many more are avoiding the harsh results of applying the provision by interpreting it out of existence. *Id.* § 9.9, at 350–51.

Thus, I believe that our decision in *Balestrieri v. Hartford Accident & Indemnity Insurance Co.,* 112 Ariz. 160, 540 P.2d 126 (1975) was wrong and should be overruled. *Balestrieri* holds that coverage for victims of hit-and-run drivers is a matter of private

contract because the legislature intended to define an "uninsured motorist" as one actually uninsured rather than one whose insurance status cannot be ascertained. That principle has been rejected in other uninsured motorist cases. *E.g., Porter v. Empire Fire & Marine Insurance Co.,* 106 Ariz. 274, 475 P.2d 258 (1970) (an insured negligent driver was considered uninsured for purposes of the uninsured motorist statute when the victim was unable to recover the minimum amount required by the statute because the limits had to be divided among several victims).

The majority argues, however, that the legislature impliedly adopted *Balestrieri* because it has since twice amended the uninsured motorist statute without redefining an "uninsured motorist" to include an "unknown mororist." Recently we have declined to accept the principle that legislative silence shows approval. *See Calvert v. Farmers Insurance Co. of Arizona,* 144 Ariz. 291, 297, 697 P.2d 684, 690 (1985) (citing *Hosogai v. Kadota,* 145 Ariz. 227, 230, 700 P.2d 1327, 1330 (1985)). The legislature has been known to amend statutes without addressing this court's interpretation. *Calvert,* 144 Ariz. at 297, 697 P.2d at 690.

The majority cites nothing to show that when the legislature amended A.R.S. § 20–259.01 in 1981 and 1982, it considered *Balestrieri*'s restrictive definition of an uninsured motorist. The general index for the House and Senate shows no bill introduced which defined "uninsured motorist" or addressed *Balestrieri. See* General Index: The Journal of the House of Representatives (1975–85); General Index: The Journal of the Senate (1975–85). Thus, there is no direct evidence of legislative intent.

More importantly, the majority fails to explain why the legislature would have intended so strange a loophole in its comprehensive insurance scheme. After *Balestrieri* was decided, the legislature enacted laws requiring compulsory liability coverage. *See* A.R.S. §§ 28–1170, 28–1251 to

1260 (Supp.1985). At the time of *Balestrieri*, unlike today, one could register an automobile without submitting proof of insurance. A.R.S. § 28–1254 (Supp.1985). The new statutes criminalize the act of driving without liability coverage. *See* A.R.S. §§ 28–1251 and 28–305, notes § 18 (Supp.1985). Minimum limits of uninsured motorist coverage are now mandatory. A.R.S. § 20–259.01(A) (Supp.1985). Since *Balestrieri* was decided, insurers have been required to offer and provide additional uninsured motorist coverage up to the limits of liability coverage. A.R.S. § 20–259.01(B) (Supp.1985). Since *Balestrieri*, the legislature has provided that insurers must offer and provide underinsured motorist coverage up to the limits of the liability coverage. A.R.S. § 20–259.01(C) (Supp. 1985). The present legislative scheme demonstrates a clear policy that every automobile accident victim have available at least the prescribed minimum amount of compensation, and that those with foresight to buy more have greater amounts available. Clearly, the legislature did not wish to leave anyone completely uncovered.

The standard policy covers victims of hit-and-run accidents in which physical contact occurs with the claimant's vehicle. *Anderson* covers victims of hit-and-run accidents in which there has been "indirect" contact. Thus, *Balestrieri's* construction of A.R.S. § 20–259 and today's majority opinion leave only one Arizona victim uncovered: the wretch injured by a miss-and-run driver who was agile enough to avoid even indirect contact. I can think of no reason why the legislature would have intended the miss-and-run victim to be the only injured person in Arizona with no way to pay for the ambulance that comes to his aid. The insurance scheme enacted by the legislature is disserved by such a result. This court would better serve the legislature's objectives by holding that the exclusion for miss-and-run drivers is void as against the public policy established by A.R.S. § 20–259.01.

Insurance companies can resolve any worry about fraudulent claims based upon "phantom" automobiles by requiring the insured to establish the existence of an actual miss-and-run driver. Standard policy forms already require the claimant to show that there *was* an unknown driver who was negligent. This is the preferred method of handling the phantom vehicle problem. *See* 1 A. WIDISS, *supra,* § 9.9, at 350–51; *Brown v. Progressive Mutual Insurance Co.,* 249 So.2d 429, 430 (Fla. 1971).

Instead of holding that *Balestrieri* has been approved by subsequent legislation, I would hold that it is an anachronism that should be overruled.