859 P.2d 724

Paula and Scott LOWING, wife and husband, Plaintiffs/Appellants,

v.

ALLSTATE INSURANCE COMPANY, INC., Defendant/Appellee.

Lewis HORVATH and Coletta Horvath, Plaintiffs–Appellants,

v.

CONTINENTAL CASUALTY, a foreign insurance company, individually in its name and d/b/a CNA Insurance Companies, Defendant–Appellee.

Nos. CV–92–0259–PR, CV–92–0381–PR.

Supreme Court of Arizona,
En Banc.

Sept. 14, 1993.

Reconsideration Denied Nov. 30, 1993.

Michael E. Larkin, Tucson, for Paula and Scott Lowing.

Kimble, Gothreau & Nelson by William Kimble, David F. Toone and Stephen E. Kimble, Tucson, for Allstate Ins. Co.

Danny L. Cowser, Flagstaff, for Lewis and Coletta Horvath.

Gallagher & Kennedy by Don D. Skypeck and W. Charles Thomson, III, Phoenix, for Continental Cas.

## OPINION

MARTONE, Justice.

We are asked to decide whether an unidentified accident-causing motorist is "uninsured" within the meaning of the Uninsured Motorist Act, A.R.S. § 20–259.-01, and thus whether an insurance policy that does not provide coverage for bodily injury caused by such motorists, unless physical contact occurred between the motorist and the insured, fails to comply with the statute. We answer both of these questions in the affirmative and therefore overrule our previous rulings to the contrary in *Balestrieri v. Hartford Accident & Indem. Ins. Co.*, 112 Ariz. 160, 540 P.2d 126 (1975) and *State Farm Mut. Auto. Ins. Co. v. Brudnock*, 151 Ariz. 268, 727 P.2d 321 (1986).

## I. BACKGROUND

### A. Horvath v. Continental Casualty

Lewis Horvath and three of his children sustained injuries when Horvath swerved his car to avoid another car attempting to pass a truck in a no-passing zone on a curve. Though Horvath's action prevented a head-on collision, he was forced off the road. The driver of the other car, whose identity remains unknown, did not stop.

Because Horvath's uninsured motorist insurance covers only those accidents caused by unknown motorists who actually "hit" the insured's vehicle, his insurance carrier, Continental Casualty, refused to cover Horvath's losses.[1] Horvath sued, seeking a declaration that the policy limitation is contrary to the requirements of A.R.S. § 20–259.01, Arizona's Uninsured Motorist Act, and thus void. The trial court granted Continental's motion to dismiss, and the court of appeals affirmed based on this court's holding in *Balestrieri v. Hartford Accident & Indem. Ins. Co.*, 112 Ariz. 160, 540 P.2d 126 (1975), that such provisions are valid. We granted Horvath's petition for review.

### B. Lowing v. Allstate Ins. Co.

Paula Lowing sustained injuries when Salvatore Gentile, the owner and driver of the vehicle in which she was a passenger, swerved to avoid colliding with a vehicle that ran a stop sign. Gentile's car missed the other vehicle, but left the roadway and overturned. The other vehicle did not stop, and its driver was never identified. Gentile's uninsured motorist insurance carrier, Allstate, refused to cover Lowing's damages because its policy limits coverage to cases in which there is actual physical contact with the unknown accident-causing vehicle.[2] Gentile sued, seeking a declaration that the policy limitation is void under A.R.S. § 20–259.01. The trial court granted Allstate's motion for summary judgment and the court of appeals affirmed based on the *Balestrieri* line of cases. We granted Lowing's petition for review and consolidated it with the Horvath case.

## II. ANALYSIS

### A. Does A.R.S. § 20–259.01 require coverage of unidentified motorists?

▆▆▆ The first question we must answer is one of statutory interpretation: does A.R.S. § 20–259.01 require coverage of unidentified motorists in addition to known motorists who are demonstrably uninsured? "The primary principle of statutory interpretation is to determine and give effect to legislative intent." *Wyatt v. Wehmueller*, 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991). *See also State v. Korzep*, 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990). The best and most reliable index of a statute's meaning is its language. That language, where clear and unequivocal, controls the statute's meaning unless it leads to absurd or impossible results. *Matter of*

---

1. The policy reads, in relevant part:
   We pay damages which you or any other *covered person* are legally entitled to recover from the owner or operator of an *uninsured* or *underinsured motor vehicle* or *boat* because of *bodily injury:*
   1. Sustained by you or any *covered person*; and
   2. Caused by a *motor vehicle* or *boat accident.*
   CNA's Universal Security Policy Deluxe, at 23 (Exhibit A to Complaint). Twenty-six pages later, in the definitions section of the policy, "uninsured motor vehicle or boat" is defined as: a land *motor vehicle* or *boat* or trailer of any type:
   \* \* \* \* \* \*
   c. Which is a hit-and-run *motor vehicle* or *boat* whose operator or owner cannot be identified and which hits:
   (1) You or any *covered person;*
   (2) A *motor vehicle* which you or any *covered person* are *occupying;* or
   (3) Your *motor vehicle* or *boat.*
   *Id.* at 49.

2. The insurance policy defines an "uninsured auto" as, *inter alia,* "[a] hit and run motor vehicle which causes bodily injury to a person insured by physical contact with the insured or with the vehicle occupied by that person. The identity of the operator and owner of the vehicle must be unknown."

*Pima County Juvenile Appeal No. 74802–2*, 164 Ariz. 25, 33, 790 P.2d 723, 731 (1990); *State v. Wagstaff*, 164 Ariz. 485, 490, 794 P.2d 118, 123 (1990). Where, instead, the statute's language is subject to different interpretations, the court is free to consult other sources of legislative intent such as the statute's context, historical background, consequences, spirit and purpose. *Arizona Newspapers Ass'n. v. Superior Court*, 143 Ariz. 560, 562, 694 P.2d 1174, 1176 (1985). Section 20–259.01(A) states:

> No automobile liability or motor vehicle liability policy … shall be delivered or issued for delivery in this state … unless coverage is provided in the policy … for the protection of persons insured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury….

In *Balestrieri*, we upheld a physical contact requirement against a public policy challenge based on what the court perceived to be the "plain language" of § 20–259.01. We reasoned that the statute requires coverage of injuries caused by "uninsured motorists" and that "uninsured" means those motorists we know are uninsured, not unidentified motorists who may or may not be uninsured. 112 Ariz. at 163, 540 P.2d at 129. Therefore, the statute does not require coverage of damages caused by *any* unidentified accident-causing motorist, whether "hit and run" or "miss and run." *Id.*

In reality, however, we cannot apply the "plain language" of the statute because we cannot know which unidentified motorists are uninsured and which are not. We must instead presume either that unidentified motorists are insured or that they are uninsured. If we presume the former, some persons injured by uninsured motorists will go uncompensated. If we presume the latter, some persons injured by insured motorists will recover from their uninsured motorist insurance carrier. Neither situation is contemplated by the literal language of the statute. The statute does not address the unidentified motorist issue. It is therefore ambiguous, and we must consult other sources to determine which of the two interpretations is more in line with legislative intent. *Compare Wiley v. The Indus. Comm'n. of Arizona*, 174 Ariz. 94, 99, 847 P.2d 595, 600 (1993) (finding worker's compensation statute ambiguous as to an issue not explicitly addressed by the statute).

The purpose of § 20–259.01 is, broadly speaking, to "close the gap in protection under the Safety Responsibility Act, A.R.S. § 28–1101 *et seq.*", *Calvert v. Farmers Ins. Co. of Arizona*, 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985), and protect people who are injured by financially irresponsible motorists, *id.* at 295, 697 P.2d at 688. Section 20–259.01 is remedial in nature and should be liberally construed in order to effectuate its purpose. *Id.* at 294, 697 P.2d at 687. Exclusions and limitations on coverage are generally invalid unless contemplated by the statute. *Id.;* see also *Rashid v. State Farm Mut. Auto. Ins. Co.*, 163 Ariz. 270, 275, 787 P.2d 1066, 1071 (1990).

Interpreting the statute to require coverage of damages caused by unidentified motorists advances its protective goal; interpreting it in a way that does not require such coverage frustrates that goal. It is unlikely that the legislature intended to protect the injured person from an uninsured motorist responsible enough to stop and be identified but not from a motorist, insured or not, irresponsible enough to cause an accident and then flee.

In *Porter v. Empire Fire and Marine Ins. Co.*, 106 Ariz. 274, 475 P.2d 258 (1970), we held that an insured who recovers less than the statutory minimum amount of coverage from a negligent motorist because the negligent driver's liability insurance is split among multiple claimants may recover the balance (i.e., up to the statutory minimum) from his or her uninsured motorist coverage. The rationale of the case was that, although the negligent motorist purchased some liability insurance, he or she is functionally uninsured as to the injured person because insurance is not available up to the minimum amount required by statute. Because the Uninsured Motorist Act was designed to make available to all

persons injured by negligent motorists a certain minimum amount of compensation, the motorist was uninsured within the meaning of the act.

Likewise, unidentified motorists are functionally uninsured as to the persons they injure because they have no insurance that is in fact available and collectible. In *Balestrieri,* we attempted to reconcile our holding with *Porter* by noting that "in both [cases] the injured party maintains the burden of establishing the fact that the negligent motorist was uninsured." 112 Ariz. at 163–64, 540 P.2d at 129–30. But an insured will never know, and can never prove, whether an unidentified negligent motorist is insured. What is important in the two cases is not which party has the burden of proof, but who is considered uninsured. In *Porter* an insured motorist with too little insurance to compensate an injured party up to the minimum statutory limits is considered uninsured. When we held in *Balestrieri* that an unidentified motorist is presumed to be insured until the plaintiff proves otherwise, we departed from the spirit of the earlier case.[3]

Thus, interpreting "owners or operators of uninsured motor vehicles" to include unidentified motorists is consistent with the general purpose of the statute, and with this court's construction of the statute. But there is more. We conclude that the legislature specifically intended the statute to include the unidentified motorist.

The act by which A.R.S. § 20–259.01 was introduced was entitled "An Act Relating to Insurance; Prescribing an Uninsured Motorist *and Unknown Motorist* Clause,

and Amending Title 20, Chapter 2, Article 2, Arizona Revised Statutes, by Adding Section 20–259.01." S.B. 42 (emphasis added).[4] The title of the act remained the same throughout the legislative process and was intact when the governor signed the bill into law. But the body of the act, the title and substance of A.R.S. § 20–259.01, did not include the phrase.

In *Balestrieri* we concluded that the "deletion" of the "unknown motorist" language from the act's body indicated "a conscious legislative design to exclude unidentified motorists from the act's coverage." 112 Ariz. at 163, 540 P.2d at 129. However, there is nothing to indicate that the "unknown motorist" phrase was ever a part of the proposed statute, and thus no reason to believe that it was "deleted."

The title of an act is very important in Arizona.[5] Under our constitution, a provision in an act is void if it addresses a subject not expressed in the act's title. Ariz. Const. art. 4, pt. 2 § 13. This is to prevent legislators from being misled into voting for a provision of which they are not aware and for which they do not actually intend to vote. *Taylor v. Frohmiller,* 52 Ariz. 211, 216, 79 P.2d 961, 963 (1938). The title can be a good guide to legislative intent, and the title of Senate Bill 42 indicates that the legislature intended § 20–259.01 to cover unidentified motorists.

Nevertheless, respondents argue that the legislature has ratified this court's holding in *Balestrieri* by "reenacting" the statute without changing it to indicate that "uninsured motor vehicles" includes unidentified

---

**3.** One might argue that, if we apply the rationale of *Porter* to the instant case, we would have to hold that the person injured by an unidentified driver can only recover from his or her insurer up to the minimum amount required by the financial responsibility act even if he or she had purchased greater uninsured motorist protection. This is not the case, however. In *Porter* the negligent motorist did in fact have insurance; the only problem was that it was split between several claimants. Had the court allowed the plaintiff in that case to recover up to the limits of his uninsured motorist coverage (which might, after all, have been over the statutory minimum) it would have turned uninsured motorist coverage into a form of underinsured

motorist coverage. It makes sense that we refused to do so. In the instant case, however, the same rationale does not apply. From the viewpoint of the injured party, the unidentified accident-causing motorist is wholly uninsured and the injured party should be able to recover up to the limits of his or her uninsured motorist coverage.

**4.** We note that this bill was passed by the legislature instead of H.B. 139, which was virtually identical except that the title did not refer to "unknown motorists."

**5.** In contrast, section headings are not. See A.R.S. § 1–212.

vehicles. *See Cagle v. Butcher*, 118 Ariz. 122, 124 n. 2, 575 P.2d 321, 323 n. 2 (1978); *Jackson v. Northland Constr. Co.*, 111 Ariz. 387, 388, 531 P.2d 144, 145 (1975) ("where a statute which has been construed by a court of last resort is re-enacted in substantially the same terms, the legislature is presumed to have placed its approval on the judicial interpretation given and adopted such construction for the re-enacted statute."). It was for this reason that we refused to overrule *Balestrieri* when earlier invited to do so. *State Farm Mut. Auto. Ins. Co. v. Brudnock*, 151 Ariz. 268, 727 P.2d 321 (1986). We have, however, expressed doubt as to whether amendment of the Uninsured Motorist Act in ways unrelated to the judicial construction at issue should be understood as legislative acquiescence in that construction, in the absence of some affirmative indication that the legislature considered and approved our construction. *Calvert v. Farmers Ins. Co. of Arizona*, 144 Ariz. 291, 297, 697 P.2d 684, 690 (1985).

■ It makes sense to infer that the legislature approves judicial interpretation of a statute when we have some reason to believe that the legislature has considered and declined to reject that interpretation. Silence in and of itself, in the absence of any indication that the legislature has considered the interpretation, is not instructive. A rule of statutory construction that requires us to presume that such silence is an expression of legislative intent is somewhat artificial and arbitrary.

Section 20–259.01 has been amended three times since *Balestrieri* was decided. None of these amendments had anything to do with unidentified drivers, or with the definition of uninsured motor vehicles. There is, therefore, no reason to assume that the legislature approves of our holding in *Balestrieri*.

We thus hold that an unidentified accident-causing motorist is an "owner or operator of an uninsured motor vehicle" within the meaning of § 20–259.01, and that the statute requires every automobile liability policy delivered or issued for delivery in Arizona to provide coverage for bodily injury caused by such motorists.

B. *Is the physical contact requirement void as against public policy?*

■ The policies at issue in this case do provide coverage for some unidentified accident-causing drivers: those that actually "hit" or have "physical contact" with the insured or the vehicle occupied by the insured. Having concluded that § 20–259.01 requires coverage of damages caused by unidentified motorists, the question becomes whether the contact limitation violates the statute. We conclude that it does. Exceptions to coverage are not generally permitted unless expressly allowed by statute. *Rashid v. State Farm Mut. Auto. Ins. Co.*, 163 Ariz. 270, 275, 787 P.2d 1066, 1071 (1990). The physical contact requirement, by arbitrarily excluding a class of people from coverage, directly conflicts with what we have determined to be the public policy of protecting people who are injured by financially irresponsible motorists.

The physical contact requirement flows from the language of the policy—not the language of our statute, and is wholly unrelated to the question of being "uninsured in fact." Our knowledge of the "insured" status of a hit and run driver is no better than our knowledge of the "insured" status of a miss and run driver. In either case, the unknown motorist is uninsured as to the injured party—there is no coverage available. The whole purpose of uninsured and underinsured motorist coverage is to allow a prudent person to protect himself or herself against the universe of risks. To exclude miss and run drivers from the definition frustrates the purpose of the statute.

Commentators agree that the physical contact requirement was created by insurance companies to prevent fraudulent claims by insureds who negligently damage their vehicles and invent a "phantom" vehicle in an attempt to recover from their insurer. The contact requirement, however, is both too broad and too narrow to accomplish this goal. *See DeMello v. First*

*Ins. Co. of Hawaii*, 55 Haw. 519, 523 P.2d 304, 310 (1974). As one commentator noted, if twenty witnesses will swear that an accident occurred as claimed by the injured insured, it is simply arbitrary to deny coverage in the absence of physical contact under the rubric of fraud prevention. *Brown v. Progressive Mut. Ins. Co.*, 249 So.2d 429, 430 (Fla.1971). Conversely, if there are no witnesses to an insured's own negligence, he or she can easily claim physical contact when there was none, and create the evidence to corroborate such a claim. *See Anderson v. State Farm Mut. Auto. Ins. Co.*, 133 Ariz. 464, 470, 652 P.2d 537, 543 (1982) (Feldman, J., concurring).

We therefore conclude that the physical contact requirement of the policies is not an authorized exception to the coverage required by the statute. It is therefore void as against public policy.

## C. *Stare Decisis*

We have dealt with the merits of the issue as though this were a case of first impression. Of course it is not. In *Balestrieri v. Hartford Accident & Indem. Ins. Co.*, we upheld the physical contact requirement, and have since refused two invitations to overrule that case. *Anderson v. State Farm Mut. Auto. Ins. Co.*, 133 Ariz. 464, 652 P.2d 537 (1982); *State Farm Mut. Auto. Ins. Co. v. Brudnock*, 151 Ariz. 268, 727 P.2d 321 (1986).

■ The doctrine of stare decisis "is grounded on public policy that people should know what their rights are as set out by judicial precedent and having relied on such rights in conducting their affairs should not have them done away with by judicial fiat." *White v. Bateman*, 89 Ariz. 110, 113, 358 P.2d 712, 713–14 (1961). It is a doctrine of persuasion, however, and not an ironclad rule. *Id.* Ultimately, the degree of adherence demanded by a prior judicial decision depends upon its merits, and it may be abandoned if the reasons for it have ceased to exist or if it was clearly erroneous or manifestly wrong. *Id.* See *Villareal v. State, Dept. of Transp.*, 160 Ariz. 474, 774 P.2d 213 (1989) (court overruled prior case on the basis of its lack of

merit, with no separate discussion of the doctrine of stare decisis).

Recently, in *Wiley v. The Indus. Comm'n. of Arizona*, 174 Ariz. 94, 847 P.2d 595 (1993), we said:

In light of our "healthy respect for *stare decisis*," we do not lightly overrule precedent and do so only for compelling reasons. Mere disagreement with those who preceded us, without more, is not an adequate reason to overrule precedent. While we should and do pay appropriate homage to precedent, we also realize that we are not prisoners of the past. In this case, there are compelling reasons to overrule precedent: (1) the language of the Act does not compel the interpretation reached in previous cases; (2) the interpretation that we overrule did not advance the policies of the Act; (3) the precedent we overrule is not the result of clear analysis or persuasive reasoning; (4) by overruling precedent, we return, in general, to the view of *Wells* [*v. Industrial Comm'n*, 63 Ariz. 264, 161 P.2d 113] [(1945)] which is better supported and reasoned; and (5) the facts of this case demonstrate that the interpretation we overrule today was imprudent and unjust.

*Id.* at 103, 847 P.2d at 604 (citations omitted). We conclude that this is another instance in which a departure from precedent is warranted.

■ First, as already discussed, the statute in this case does not compel the interpretation reached in *Balestrieri*. Despite our reliance on the plain language of the statute, § 20–259.01 does not address the unidentified motorist situation directly. Second, the *Balestrieri* interpretation did not advance the policies of § 20–259.01 because it left a loop-hole in protection from irresponsible motorists otherwise provided by the statutory scheme. Third, we do not share *Balestrieri*'s analysis or reasoning. The court relied heavily upon what it viewed as the conscious legislative design to exclude unidentified motorists from the act's coverage. But the "unknown motorist" phrase that appeared in the title of the

act was never deleted from the statute; it was never there. Fourth, by overruling *Balestrieri* we return to the policy expressed in *Porter* of evaluating the status of the financially irresponsible motorist from the viewpoint of the injured insured. Fifth, the facts of these cases demonstrate that the *Balestrieri* interpretation is unjust. As one commentator noted:

> An alert, athletic pedestrian who barely manages to avoid contact with such a car by leaping through a plate glass window receives the unkindest cuts of all for his efforts, but cannot qualify. Snubbed, too, is the driver who miraculously manages to steer his car off the highway and thus avoid a collision with an oncoming vehicle traveling in the wrong lane, but in so doing effects a rather abrupt stop against an unyielding bridge abutment.

*McGlynn v. Safeco Ins. Co. of America,* 216 Mont. 379, 701 P.2d 735, 739 (1985) (quoting 55 Ill.Bar J. 143, 147 (1966)). In contrast, a less alert pedestrian or driver would recover. Finally, by overruling *Balestrieri* we join the view of a leading commentator in the field. *See* Alan I. Widiss, 1 *Uninsured and Underinsured Motorist Insurance* § 9.7 at 484–85 (2d ed. 1990). In short, although we have a healthy respect for stare decisis, we will not be bound by a rule with nothing more than precedent to recommend it. *See Streitweiser v. Middlesex Mut. Assurance Co.,* 219 Conn. 371, 593 A.2d 498 (1991) (court overruled prior precedent and held that the Connecticut uninsured motorist statute requires coverage of damages caused by unidentified motorists).

### III. *RETROACTIVITY*

■ Continental Casualty asks us to make our ruling prospective only. Normally, our decisions in civil cases operate retroactively as well as prospectively. However, we have a great deal of "discretion to decide the most equitable time to make new rules applicable." *Villareal v. State, Dept. of Transp.,* 160 Ariz. 474, 480, 774 P.2d 213, 219 (1989); *see also Fain Land & Cattle Co. v. Hassell,* 163 Ariz. 587, 596, 790 P.2d 242, 251 (1990) ("Whether an opin-

ion will be given prospective application only is a policy question within this court's discretion."). In making this determination, we consider whether:

> 1. The opinion establishes a new legal principle by overruling clear and reliable precedent or by deciding an issue whose resolution was not foreshadowed;
>
> 2. Retroactive application would adversely affect the purpose behind the new rule; and
>
> 3. Retroactive application would produce substantially inequitable results.

*Law v. Superior Court,* 157 Ariz. 147, 160, 755 P.2d 1135, 1148 (1988). We will limit a new rule to prospective application if, on balance, these factors indicate that retroactive application would be unjust.

■ In this case, the first factor clearly weighs against retroactive application. We are breaking with clear precedent, and there have been no changed circumstances that would alert insurance companies that this was likely.

The second factor weighs in favor of retroactive application because it would further rather than adversely affect the remedial purpose behind our ruling that physical contact requirements are void.

The third factor cuts both ways. Retroactive application may cause some insurers to be disadvantaged by claims not within their risk analyses. Yet some insureds may be disadvantaged by nonretroactivity—legitimate claims will be barred by the fortuity of decision making locked in a space/time continuum.

On balance, although a close question, we think these factors indicate that retroactive application would be unjust. We therefore limit today's rule to the litigants here and to claims which arise on and after today's decision.

### IV. *CONCLUSION*

We hold that unidentified accident-causing drivers are uninsured within the meaning of A.R.S. § 20–259.01. Therefore, insurers issuing automobile liability policies within this state must provide coverage for

damages caused by these drivers. Physical contact requirements, by restricting coverage to only those unidentified drivers who actually hit the insured, are in conflict with the statute and are void. By so holding, we overrule our prior decisions to the contrary, *Balestrieri v. Hartford Accident & Indem. Ins. Co.*, 112 Ariz. 160, 540 P.2d 126 (1975) and *State Farm Mut. Auto. Ins. Co. v. Brudnock*, 151 Ariz. 268, 727 P.2d 321 (1986). The memorandum decision of the court of appeals in *Lowing* is vacated. That part of the memorandum decision in *Horvath* that relates to the physical contact requirement is vacated. In both cases the judgments of the superior court are reversed and the cases are remanded to the superior court for proceedings consistent with this opinion.

FELDMAN, C.J., MOELLER, V.C.J., and ZLAKET, J., concur.

CORCORAN, Justice, Specially concurring:

I concur not only with the result in these cases, but also with the analysis, with one exception. Senate Bill 42 had in the Act's title the surplus words "and unknown motorists," which was a subject *not* referred to in the text of the Act. The opinion concludes that "the legislature intended § 20–259.01 to cover unidentified motorists" because the title of the Bill referred to "unknown motorists."

The opinion correctly notes that under our state constitution, a provision in the text of an act is void if it addresses a subject not expressed in the act's title. From this, however, the opinion leaps to the conclusion that the title of an act is "a good guide to legislative intent." I cannot agree with the implication in the opinion that if the title of a bill contains surplus language, it is "read into" the text of the statute as an indication of legislative intent. At most, the excess words in the title are neutral.

My conclusion is that the best "guide to legislative intent" is to consider the *text* of a statute that has been adopted, rather than to consider surplus language in its title that is not contained in the text.